*In re* ESTATE OF GEORGE D. SAX, Deceased.—(SAMUEL W. SAX, Petitioner-Appellee, *v.* EDWARD L. SAX *et al.*, Respondents-Appellants.—(HOWARD KORENGOLD, Guardian ad Litem, Appellee; ANTONOW & FINK, Attorneys, Appellees).)

First District (1st Division)    No. 79-2389

Opinion filed January 19, 1981.

William J. Campbell, Jr., and Peter Petrakis, both of O'Brien, Carey, McNamara, Scheuneman & Campbell, Ltd., of Chicago, for appellants.

William I. Goldberg and Robert A. Janoski, both of Antonow & Fink, of Chicago, for appellees.

Bernstein & Korengold, of Chicago (Ralph M. Bernstein, of counsel), for guardian ad litem.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County, probate division, granting a petition brought by petitioner, Samuel W. Sax, to direct the executors of the estate of George D. Sax (hereinafter called testator) to carry out the provisions of the testator's will between

the two trusts established by the will (a marital trust and a family trust). This appeal is taken by the respondents, Edward Sax and George Sax, with regard to that portion of the circuit court's order holding that "residue" is defined in the will to mean the gross probate estate less only the amount of the specific bequests.

Edward Sax, as executor, also appeals the circuit court order allowing Samuel Sax's attorneys, Antonow and Fink, $36,541.00 in interim fees, and expenses of $95.

The issues presented for review are: (1) whether the trial court erred in determining the proper allocation of the residue of the estate, as defined in the will of the testator, regarding the marital trust portion and the family trust portion established by that will and (2) whether the trial court abused its discretion in awarding fees to the attorneys for the petitioner.

The testator died on March 12, 1974. On May 15, 1974, the circuit court appointed three executors of his estate: one of his sons, Samuel Sax, his widow, Rhoda Sax, and the Exchange National Bank of Chicago (hereinafter called Exchange). Rhoda Sax died on December 9, 1977, and another son, Edward Sax, was appointed a successor executor, under the provisions of the testator's will.

The will of the testator required that his estate be divided by the executors into a marital trust and a family trust, pursuant to a formula provided in the will. The trustees of both of these trusts were to be Exchange, Rhoda Sax, and Samuel Sax. Exchange subsequently resigned as trustee and, by order of court, the Continental Illinois Bank and Trust Company of Chicago (hereinafter called Continental) was appointed co-trustee of both trusts. In the course of the proceedings below, the court also appointed a guardian ad litem to represent the interest of minors and unborn.

Rhoda Sax was the primary beneficiary of the marital trust. Upon her death, the remaining principal and undistributed income of the marital trust was to be distributed to the trustees of the family trust, except insofar as Rhoda Sax exercised a general power of appointment which was granted to her by testator's will. The entire net income of the family trust was to be distributed to Rhoda Sax during her lifetime. Upon her death, the family trust was to be divided into three separate trusts, the income of each one going to one of each of her three sons, for his lifetime. Upon his death, each son is allowed the limited power to appoint his share of the family trust to his children.

In her will Rhoda Sax exercised the general power appointment over the marital trust in favor of two of her sons, George Sax and Edward Sax, to the exclusion of her third son, Samuel Sax. Thus, none of the assets in the marital trust passed into the family trust.

After testator's death, the Exchange, as trustee, allocated the assets of the estate of the testator between the marital and family trusts in a manner with which Samuel Sax disagreed. The difference between the positions of the parties on this issue relates to the question of whether debts, taxes and expenses will be charged against the gross estate to arrive at the value of the residue of the estate in determining the value of the denominator of the formula to be used in determining the marital and family portions of the estate.

Samuel Sax filed a petition to direct the executors to carry out the provisions of the will in the manner suggested by him. The circuit court granted the petition, holding that only specific bequests are to be deducted from the gross probate estate to arrive at the value of the denominator.

Testator's intent as set forth in his will was to provide first for his wife, Rhoda, during her lifetime; then for his sons (Petitioner, Samuel, and Respondents, Edward and George), equally, during their lives; and then for his grandchildren and their descendants.

The will utilized two techniques to minimize taxes both in estates of the first generation (the testator and his wife) and the second generation (their sons). First, the will provided for a fractional share marital deduction formula; and second, the will provided for generation-skipping trusts for the benefit of his descendants, thereby keeping his property from being included in, and taxed in, the estates of his sons on their deaths.

Testator's will provided for certain specific bequests totalling $25,500. Thereafter, by application of the marital fraction, the estate was to be divided into a marital portion held in a marital trust and a family portion held in a family trust. The will further provided that debts, funeral expenses and expenses of administration should "be paid from the Residue other than the Marital Portion thereof."

Testator's wife, Rhoda, was to receive income from both trusts for life. Rhoda was given a general testamentary power of appointment over the marital trust. If she did not exercise that power, the marital trust, as it existed on her death, was to be distributed to the family trust.

Rhoda Sax died on December 9, 1977. In her will she exercised her power of appointment, giving the marital trust property outright to the respondents, Edward Sax and George Sax, giving rise to this controversy.

The will provides that upon Rhoda's death, the family trust is to be divided into three equal trusts, one for the benefit of each of testator's three sons. Each son is to receive the income from his share of the family trust during his lifetime. Upon his death, each son is given a limited power to appoint his share of the family trust to his children.

The family trust is for the benefit of all descendants of Rhoda Sax

and George Sax, including their children and grandchildren. The guardian ad litem was appointed to represent the grandchildren and their descendants, born and unborn.

The question of allocation of residue between the marital trust and the family trust hinges on the determination of the marital fraction, as defined in the will.

Section A4.02(A)(2) of the will provides that the assets of the estate which are to comprise the marital portion and are to be distributed into the marital trust, shall consist of that portion of the residue which results from a multiplication of the residue by the marital fraction. The will provides:

> "The term 'Marital Portion' shall mean the assets selected by the Executor, as herein provided, having an aggregate value on the date or dates of distribution thereof equal to that portion of the value of the Residue on such date or dates determined by the Executor by applying the Marital Fraction to the value of the Residue on such date or dates."

The determination of the marital fraction is prescribed by the will. The numerator is not at issue in the case. The denominator is defined in section A4.04(A)(1)(b), as follows:

> "The denominator of which shall be an amount equal to the value of the Residue as finally determined for Federal estate tax purposes."

The second article of testator's will, A-II, provides for the payment of debts, funeral expenses, and taxes out of the family portion, which was to go to the family trust. Section A2.01 authorizes the executors to pay:

> "* * * my just debts, funeral expenses and expenses of administration * * *. Any and all such debts and expenses shall be paid from the Residue other than the Marital Portion thereof (each as hereinafter defined)."

Section A4.02(A)(3) provides that the remainder of the residue is the family portion of the estate, after the marital portion is determined, and such family portion will be distributed into the family trust. The will provides as follows:

> "The term 'Family Portion' shall mean the remainder of the Residue after satisfaction of lapse of the Marital Portion devise and bequest herein provided."

Section A4.02(B) of the will provides that "the Marital Fraction (which is determined from Federal estate tax valuations) will remain constant * * *."

The trial court found that residue "is defined in the Will to mean the gross probate estate less only the amount of specific bequests." The

parties agree that, for Federal estate tax purposes, the value of the gross probate estate is $2,054,209.99 and the specific bequests equal $25,500.

Utilizing the trial court's definition of residue, the court found the denominator (an amount equal to the value of the residue as finally determined for Federal estate tax purposes) was $2,028,709.99. The court rejected the contention of the respondents, Edward Sax and George Sax, that residue means gross probate estate less both (1) specific bequests and (2) all expenses, taxes, debts and costs of administration payable by the executors under article A-II of the will.

Subsequent to the trial court's determination of the questions regarding the marital portion, Antonow & Fink, as attorneys for the petitioner, Samuel Sax, filed their petition for interim fees, for fees and disbursements through July 31, 1979, in connection with Samuel Sax' petition. The total amount requested was $42,266. Edward Sax, as co-executor, objected to this petition as unreasonably excessive. All parties submitted memoranda, and the court awarded fees in the amount of $36,541.00, plus $95 in expenses.

This appeal is taken from the August 1, 1979, order granting petitioner Samuel Sax' petition to direct executors to carry out provisions of will, and from the September 12, 1979, order awarding fees to petitioners' attorneys.

The law is clear in Illinois that the intention of the testator governs the distribution of his estate. (*Williams v. Fulton* (1954), 4 Ill. 2d 524, 123 N.E.2d 495, 497.) In construing a will, the court generally must determine the intent of the testator as it is set forth within the four corners of the will. (*Estate of Callner v. American National Bank & Trust Co.* (1974), 24 Ill. App. 3d 268, 271, 320 N.E.2d 384, 387.) Thus, the issue is what the testator intended by the words, "* * * the value of the Residue as finally determined for Federal estate tax purposes," in the context of the will itself.

Respondents, Edward Sax and George Sax, claim that the residue is that which is left after the debts, funeral expenses, administrative expenses and taxes have been paid, and after specific bequests have been satisfied. Respondents argue this is so because article IV of the will defines residue as "* * * being all of the rest, residue and remainder * * *" and because article IV comes after the Will directs the payment of debts, funeral expenses, taxes and costs of administration in article II and the payment of specific bequests in article III. Respondents also argue that the phrase "rest and residue" in a will, in the absence of language showing an intention to the contrary, means the estate remaining after the payment of charges, debts and particular legacies (36 Ill. L. & Prac. *Wills* §286, at 371).

■■ A fair reading of the will reveals the testator intended residue to mean the gross probate estate less only the amount of the specific bequests. The trial court so found. This definition is reinforced by the requirement of article A-II that expenses, debts and taxes be paid from the family portion of the residue, which is defined in the will as being "the remainder of the residue, after satisfaction or lapse of the Marital Portion * * *." Furthermore, by using respondents' definition of residue, the direction in the will that the value of the residue be as finally determined for Federal estate tax purposes, is not and cannot be followed. This is so because their definition of residue requires deduction of expenses and taxes not appearing on the Federal estate tax return.

Even though article IV of the will defines residue and comes after the articles in the will which direct the executors to pay debts, funeral expenses, taxes and expenses of administration, the will as a whole reveals a clear intention to have these expenses deducted from the family portion and not from the marital portion.

■■ The respondents, Edward Sax and George Sax, correctly state the law that the phrase "rest and residue" in a will, in the absence of language showing an intention to the contrary, means the estate remaining after the payment of charges, debts and particular legacies. In the case at bar, however, the exception to the rule is applicable, since the will clearly indicates such a contrary intention.

For the above reasons we find the circuit court properly determined the distribution of the testator's estate with regard to the amount of the marital portion.

Edward Sax, as executor, also claims the circuit court abused its discretion in awarding excessive fees to the attorneys for the petitioner. More specifically, Edward Sax argues that the court abused its discretion by awarding those attorneys $36,541 in fees, while awarding the other four fee petitioners $8,325, $8,000, $6,595 and $4,945 respectively.

The law is clear in Illinois that an award of attorney's fees will not be disturbed on appeal absent a manifest abuse of discretion (*In re Estate of Marks* (1979), 74 Ill. App. 3d 599, 393 N.E.2d 538; *Aluminum Coil Anodizing Corp. v. First National Bank & Trust Co.* (1978), 64 Ill. App. 3d 256, 381 N.E.2d 201). The court in *Marks* also provided standards for awarding fees to attorneys for executors, by stating,

> "The amount of an attorney's fee award for services provided by him to an executor of an estate is a matter within the province of the probate court. (*In re Estate of Jaysas* (1961) 33 Ill. App. 2d 287, 179 N.E.2d 411; *Estate of Brown* (1978), 58 Ill. App. 3d 697, 374 N.E.2d 699.) The amount of the award is determined by the probate court within the ambit of its judicial discretion. (*Jaysas; Brown.*) 'The factors to be considered include the size of the estate,

the work done and the skill with which it was performed, the time required, and the advantages gained or sought by the services or litigation.' " *Marks*, 74 Ill. App. 3d 599, 604, 393 N.E.2d 538, 541-42.

The trial court had before it the evidence required to apply the factors stated in *Marks*: that being the size of the estate, the work to be done, the skill with which it was performed, the number of hours expended and the advantages sought and gained.

The testator left a sizable estate. The amount subject to reallocation depending on the outcome of this proceeding totaled cash distributions to the trustees of $3,382.664.79, plus noncash assets.

Petitioner, Samuel Sax, was one of three co-executors. His position as to the method of carrying out the provisions of the will of the testator was initially opposed by the other two co-executors. Therefore, the petitioner was forced to retain independent counsel and to take legal action. Petitioner's counsel had to frame the issues, respond to points raised by the various parties to the litigation and then take the initiative in focusing the issue to be resolved after the responsive pleadings had been filed. The work required an expenditure of substantial time, which is set forth on the time sheets submitted in support of the fee petition.

Petitioner, Samuel Sax, sought to have the will of his father implemented and he prevailed. Had the petitioner agreed to the position of his co-executors, the family trust would have been reduced substantially.

■■ The attorneys of the petitioner were required to carry burdens of much more difficulty than counsel for other parties to the litigation. In addition, the trial court carefully weighed the factors to be considered in awarding the attorneys' fees (see *Marks*). A review of those factors reveals the trial court properly exercised its discretion in awarding attorneys' fees, even though that amount exceeds the fees awarded to counsel for the other parties.

For the above and foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.