BLAKE G. BERGHEGER *et al.*, as Independent Coex'rs of the Estate of Jennie H.A. Biebel, Deceased, Plaintiffs-Appellants, v. KAY A. BOYLE *et al.*, Defendants-Appellees.

Fifth District   No. 5—92—0347

Opinion filed February 25, 1994.

George E. Marifian, of Mathis, Marifian, Richter & Grandy, Ltd., of Belleville, for appellants.

Thomas A. LeChien and Julia B. Welch, both of LeChien & Associates, Ltd., of Belleville, for appellee Kay A. Boyle.

Donald M. Samson, of Belleville, for appellee Thomas C. Wangelin, Jr.

JUSTICE MAAG delivered the opinion of the court:

In 1986 and later in 1988, Norman J. Biebel purchased several annuities (a total of four). At the time Norman purchased the annuities, he designated his first wife, Verna, as beneficiary of all four annuities. Verna died in December of 1988. A few weeks after Verna died, Norman changed the beneficiary of three of the annuities to his only child, Kay A. Boyle. The fourth annuity retained the designation of Verna as beneficiary. At all times subsequent to his purchase of the annuities Norman remained the owner.

In March and April of 1989, Norman and Jennie began making plans to be married. In anticipation of their marriage, they executed an antenuptial agreement, with the assistance of counsel. This agreement contained schedules of the assets of both parties and contained three specific rights and concomitant duties. By the terms of the agreement: (1) Norman was to pay Jennie $120,000 for her home, (2) Norman was required to make a will leaving Jennie one-third of the "residue of his estate," and (3) Jennie's children had the right to her personal belongings if she died prior to Norman. The four annuities and their respective values were listed in a schedule attached to the agreement which set forth all of Norman's assets and liabilities.

On May 20, 1989, Jennie and Norman were married, and Norman executed his will with a provision leaving Jennie one-third of the residue of his estate. Jennie placed her home in joint tenancy with Norman, and on August 11, 1989, certificates of deposit in Norman's name in joint tenancy with his first wife and daughter were changed to joint tenancy with Jennie. On August 14, 1989, Norman died.

The three annuities with Kay Boyle as designated beneficiary are the subject of this appeal. The fourth annuity with Verna still designated as beneficiary became part of the residue of Norman's estate according to its contractual terms and is not at issue.

On November 23, 1989, Jennie died. On November 30, 1989, plaintiffs, Blake G. Berghegen, Brian F. Berghegen, Brent C. Berghegen, were appointed independent coexecutors of Jennie's estate. On December 13, 1989, Kay was appointed successor executor of Norman's estate, replacing Jennie. Plaintiffs filed a complaint alleging breach of the antenuptial agreement and seeking the impression of a constructive trust on the proceeds of all four annuities.

On December 5, 1991, Kay resigned as successor executor and Thomas Wangelin, Jr., was appointed administrator with the will annexed of Norman's estate.

This case was submitted to the trial court on stipulated facts. On May 1, 1992, the trial court granted judgment in favor of the defendants finding no breach of the antenuptial agreement executed by Norman and Jennie.

The sole issue raised on appeal is whether the contract to make a will, as contained in the antenuptial agreement requiring Norman to leave a fraction of the residue of his estate to Jennie, was breached by the passing of the proceeds of the three annuities outside the residue of Norman's estate.

Plaintiffs advance two arguments in support of their contention that the trial court erred in finding that the antenuptial agreement had not been breached. Plaintiffs allege that an implied term of the antenuptial agreement required Norman to deal with his property in good faith. They claim this good-faith provision was breached when the proceeds of the three annuities passed outside the residue of Norman's estate. Secondly, plaintiffs argue that the three annuities were part of the "residue" within the meaning of the contract to make a will. This claim is grounded on the assertion that the annuities were Norman's property, they were listed in the antenuptial agreement, and they were not the subject of a specific bequest or devise in Norman's will.

Defendants contend that property passing outside a will does not

defeat the purpose of an antenuptial agreement or a contract to make a will in all instances. Property passing outside a will defeats the purpose of an antenuptial agreement or contract to make a will only when the aggrieved party had some legal right in the nonprobate property. Defendants argue that Jennie never had any legal right to the proceeds of the three annuities, and therefore, there was no breach of the implied term of good faith.

Additionally, defendants contend that absent a clear and contrary intent in the agreement, "residue" means the probate estate remaining after charges, debts, and particular legacies. Defendants argue that the three annuities were nonprobate property not subject to and never intended by Norman and Jennie to be part of Norman's probate estate and "residue." We agree.

■ Under the Probate Act of 1975 (Probate Act) (755 ILCS 5/1—1 *et seq.* (West 1992)) and its predecessors, the real and personal estate which a person of testamentary capacity has at the time of his death may be disposed of by will. (*McGlothlin v. McElvain* (1950), 407 Ill. 142, 95 N.E.2d 68.) A will can convey only such property as a person has (*Alcorn v. Alcorn* (1941), 309 Ill. App. 267, 32 N.E.2d 982) and cannot pass title to property which a testator has previously transferred. (*Fitzgerald v. Daly* (1918), 284 Ill. 42, 119 N.E. 911.) For example, on the death of a joint tenant, title to the property held in joint tenancy passes to the survivor. (*Hoeffner v. Hoeffner* (1945), 389 Ill. 253, 59 N.E.2d 684.) The Probate Act superseded the common law concerning descent and distribution (*Wall v. Pfanschmidt* (1914), 265 Ill. 180, 106 N.E. 785) and does not govern the rights of beneficiaries to the proceeds of life insurance policies. *State Farm Life Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 363 N.E.2d 785.

■ The Third Party Beneficiary Contract Act (755 ILCS 30/0.01 *et seq.* (West 1992)) governs the rights of contractual beneficiaries and provides in pertinent part:

> "The designation in accordance with the terms of any insurance [or] annuity *** of any person to be a beneficiary, payee or owner of any right, title or interest thereunder upon the death of another, or any assignment of rights under any of the foregoing, *shall not be subject to or defeated or impaired by any statute or rule of law governing the transfer of property by will, gift or intestacy*, even though such designation or assignment is revocable or the rights of such beneficiary, payee, or owner or assignee are otherwise subject to defeasance." (Emphasis added.) 755 ILCS 30/0.01 (West 1992).

Had there been no antenuptial agreement, Jennie, as Norman's surviving spouse, would not be entitled to any of the proceeds of the

three annuities even if she renounced Norman's will under section 2—8 of the Probate Act (755 ILCS 5/2—8 (West 1992)). Because Jennie was not entitled to the proceeds of the three annuities without the antenuptial agreement, we will now examine whether the agreement entitled Jennie to the proceeds.

■ Persons legally competent to contract may execute a valid antenuptial agreement. (*Seuss v. Schukat* (1934), 358 Ill. 27, 192 N.E. 668.) Although the law prescribes the rights of a husband and wife in the property of each other, persons may, by agreement, exclude the operation of the law and determine for themselves what rights they will have in each other's property during the marriage. (*In re Marriage of Burgess* (1984), 123 Ill. App. 3d 487, 462 N.E.2d 203.) The rules governing the construction and interpretation of contracts are generally applicable in the construction and interpretation of antenuptial agreements. *Guhl v. Guhl* (1941), 376 Ill. 100, 33 N.E.2d 185.

The antenuptial agreement that Norman and Jennie executed contained a provision for a contract to make a will. Plaintiffs concede that the express terms of the contract to make a will, literally construed, were not breached. Norman did execute a will leaving one-third of the residue of his estate to Jennie.

Nonprobate property may be subject to a contract to make a will. (See *First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532.) Clearly, Norman and Jennie could have expressly provided that the proceeds of the three annuities were subject to the contract to make a will. They did not. The agreement is silent on the issue of whether the three annuities were to be included in Norman's probate estate.

■ Plaintiffs argue that the three annuities were part of the "residue" within the meaning of the contract to make a will because the annuities were Norman's property, listed in the antenuptial agreement and not contained as a specific bequest or devise in Norman's will. However, it is well recognized that the meaning of a contract is determined from the words used, and a court will use the plain and obvious meaning of the words in construing a contact. (*Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458 N.E.2d 480, 481.) The court will not add language or matters to a contract about which the document is silent. *Gordon v. Bauer* (1988), 177 Ill. App. 3d 1073, 1088, 532 N.E.2d 855, 864.

We believe that a "residuary" devise or bequest contemplates that the devisee or legatee shall receive something which is uncertain or which cannot be described with certainty by the testator since it is limited to the surplus of his probate estate. (*In re Estate of Marti* (1941), 311 Ill. App. 237, 35 N.E.2d 696, 698.) This must be distin-

guished from his nonprobate estate. It is well recognized that technical terms with established meanings are presumed to be used according to their technical meanings unless they are otherwise explained. (*In re Estate of Laas* (1985), 134 Ill. App. 3d 504, 480 N.E.2d 1183.) In other words, in the absence of a contrary intention, "residue" means the probate estate remaining after charges, debts, and particular legacies. (*In re Estate of Sax* (1981), 92 Ill. App. 3d 787, 416 N.E.2d 309.) There is nothing in the antenuptial agreement which indicates that Norman and Jennie intended "residue" to mean anything other than the surplus of Norman's probate estate. At no time were the three annuities part of Norman's probate estate.

The fact that the annuities were listed in the schedule of Norman's assets and liabilities is of no consequence. For an antenuptial agreement to be enforceable, both parties must have knowledge or reasonably should have knowledge of the extent of each other's property before entering into the agreement. (*Eule v. Eule* (1974), 24 Ill. App. 3d 83, 320 N.E.2d 506.) Knowledge of the extent of each party's property is necessary, because one of the valid purposes for an antenuptial agreement is to release the right to share, testate or intestate, in the estate of the other spouse by either taking under or electing to take against the will of the deceased spouse. *Geiger v. Merle* (1935), 360 Ill. 497, 196 N.E. 497.

■ Lastly, plaintiffs contend that Norman failed to manage his property in good faith and thus defeated Jennie's reasonable expectations. They claim this alleged failure constituted a breach of the antenuptial agreement. Plaintiffs correctly state that the failure to include the proceeds of the three annuities in Norman's probate estate reduced the amount of money Jennie received as a residuary devisee. They argue that this failure resulted in Jennie's receiving less than her share.

"There would be little or no reason for making ante-nuptial contracts prescribing the rights of a husband and a wife in the property of each other, if such agreements did not provide that one or both parties to the contemplated marriage should receive less from the estate of the other than he or she would acquire under applicable statutes of descent." (*Megginson v. Megginson* (1937), 367 Ill. 168, 178, 10 N.E.2d 815, 820.) In the instant case, because of the Third Party Beneficiary Contract Act, Jennie would not have been entitled to the proceeds of the three annuities under application of the statutes of descent. With reference to the allegation that Jennie received less than her share of Norman's estate, "The mere fact that a provision is disproportionate does not make an agreement voidable where the aggrieved party is not ignorant of the extent of the spouse's property." *Parker v. Gray* (1925), 317 Ill. 468, 148 N.E. 323.

The annuities and their respective values were listed in the schedule attached to the agreement. There is nothing in the agreement which required Norman to delete or change the beneficiary of his annuities. Moreover, nothing indicated that the proceeds of any of the annuities were to be part of the probate estate. At no time did Jennie acquire any legal right or interest in the three annuities. Without any legal right or interest it cannot be said that Jennie possessed a reasonable expectation to receive any portion of the proceeds of the annuities.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

LEWIS, P.J., and CHAPMAN, J., concur.