OPINION *Page 2 
{¶ 1} Defendant-appellants Otisha Christian, et al. appeal the decision of the Mahoning County Common Pleas Court which granted summary judgment in favor of plaintiff-appellee J.G. Wentworth, LLC. The issue on appeal is whether the decedent's agreement to transfer his future scheduled payments from a structured settlement annuity allowed J.G. Wentworth, as the decedent's purported assignee, to bar appellants, who are the named beneficiaries on the annuity, from collecting the payments due after the decedent's death. There are multiple subissues including: whether appellants have standing to raise the anti-assignment clause in the annuity contract, whether the anti-assignment clause bars J.G. Wentworth's attempt to enforce the assignment, whether the named beneficiary has superior rights over J.G. Wentworth's claims even without the application of the anti-assignment clause, and whether appellants were properly retained as the named beneficiary on the annuity.
 {¶ 2} For the following reasons, we hold that the anti-assignment clause is enforceable by appellants. We also and alternatively hold that appellants are the named beneficiaries with rights superior to J.G. Wentworth over payments due after the decedent's death. As such, the trial court's judgment is reversed, and summary judgment is hereby entered in favor of appellants.
 STATEMENT OF THE CASE {¶ 3} Otis Christian (the decedent) was injured at work. On August 13, 1993, he entered a settlement agreement with his employer, CSX Transportation, Inc., through its liability carrier Safeco Life Insurance Company (now known as Symetra Life Insurance Company and hereinafter referred to as Symetra). The settlement provided the decedent with a lump sum plus a structured settlement in the form of an annuity, which paid the following amounts on August 17 of each specified year: $13,500 in 1995 and 1997; $5,500 in 1998; $13,5000 in 1999; $8,000 in 2001, 2003, 2005, 2007, 2009, 2011 and 2013; and finally, $74,000 in 2015. These payments were payable to the decedent, or if he should die, to his estate or other named beneficiary. *Page 3 
 {¶ 4} The settlement agreement states, "The Claimant shall have no legal or equitable interest, vested or contingent, in such annuity. The Company or Assignee shall be the sole owner of such annuity." The settlement agreement allowed the employer to assign its duties to Symetra, which it did thus transferring its obligations to Symetra as the owner. Paragraph six of the settlement agreement contains an anti-assignment clause, which states:
 {¶ 5} "The amounts paid and to be paid to Claimant or to any other payee under this Agreement are his sole and separate property and no other person has any right or interest therein. No amount payable under this Agreement shall be subject to anticipation, assignment, sale, transfer, pledge, alienation, or encumbrance by any Claimant or by any other payee thereof, nor to attachment, seizure or legal or equitable process by any creditor of any Claimant or other payee prior to its actual receipt by such Claimant or other payee, nor may any such Claimant or other payee accelerate, defer, increase or decrease any amount payable under this Agreement."
 {¶ 6} A separate annuity contract also contains an anti-assignment clause providing that the annuitant cannot anticipate, sell, assign or encumber any payment. The owner, however, was contractually permitted to enter an absolute assignment as did the employer to Symetra. The annuity contract also discloses that benefit payments will be made to the annuitant unless otherwise designated in the application and that if the annuitant dies, any remaining payments will be made to the beneficiary. It states that the beneficiary of the policy is as named in the attached application unless changed by the owner, who is also identified in the application. This application reveals that the decedent was the annuitant, Symetra was the owner, and the decedent's estate was the original beneficiary.
 {¶ 7} On January 16, 1995, Symetra received a handwritten letter from the decedent seeking to change his beneficiary to his four daughters, Otisha, Jada, Keona and Christina Christian, appellants herein. The letter was signed by the decedent and by each of his daughters. Symetra approved the change as the owner of the annuity. In a March 3, 1995 letter, Symetra explained that the new beneficiaries are considered to have an interest in the annuity benefits upon the decedent's death and that Symetra, as the owner, would require the daughters to release their interest prior to *Page 4 
any future beneficiary change. Symetra concluded that the decedent should contact their office and inform them if this was not his intent in which case the beneficiary would then be recognized as originally stated on the application as his estate. A telephone number was provided, and he was urged to call to discuss this "complicated" issue. However, there were no further communications for nearly two years.
 {¶ 8} On November 15, 1996, the decedent executed a purchase agreement with J.G. Wentworth whereby the decedent agreed to sell the $13,500 annuity payment payable to him on August 17, 1997 in return for $9,500. He agreed to change his address with Symetra so J.G. Wentworth would receive the payment, and he gave J.G. Wentworth permission to sign his name on the anticipated annuity check.
 {¶ 9} In addressing the anti-assignment clause in the annuity contract, the J.G. Wentworth purchase agreement claims that any assignability restrictions on the assigned assets were included solely at the decedent's request and at his instruction and that the decedent (on behalf of himself and his heirs, beneficiaries, executors, administrators and legal representatives) waives and releases all rights regarding such assignability restrictions. The purchase agreement also acknowledges that the annuity and/or settlement agreement may contain provisions that restrict or purport to restrict the assignability of the assets, but stated that the decedent waived any claim that the assets were not assignable and that the decedent indemnified J.G. Wentworth from any claim that the assets are not assignable.
 {¶ 10} At this same time, the decedent also signed instructions to his estate and to all heirs and beneficiaries under his will or at law declaring that the purchase agreement is binding upon them and that they must sign over all checks received from the annuity to J.G. Wentworth as per the purchase agreement. The purchase agreement stated that the decedent was to sign such instructions and to provide to J.G. Wentworth a change of beneficiary form changing the beneficiary of the annuity to J.G. Wentworth.
 {¶ 11} Evidently, in anticipation of executing the purchase agreement, the decedent mailed two typewritten letters to Symetra on November 11, 1996. In one, he asked Symetra to change his address to a post office box in California apparently *Page 5 
controlled by J.G. Wentworth. Symetra did so but warned in a response that if his intent was to collateralize the payments, they are not bound by such action.
 {¶ 12} In the other letter, the decedent asked Symetra to change its records to show his estate as the beneficiary of the annuity. On January 8, 1997, Symetra responded to the decedent that, as explained in their March 1995 letter (which they attached), he can only change the beneficiary if he receives a written release with notarized signatures from the four currently named beneficiaries. On February 5, 1997, Symetra followed up, noting that his four daughters remain as his beneficiaries and that they were closing the file on the matter of the beneficiary change.
 {¶ 13} These response letters were sent both to the decedent's home address and to the new California post office box. Notwithstanding Symetra's refusal to change the beneficiary to the estate, J.G. Wentworth continued to provide advances on the decedent's structured settlement, entering four more purchase agreements in the next two years.
 {¶ 14} For instance, on March 17, 1997, they agreed to provide the decedent with $7,600 in return for allowing J.G. Wentworth to retain certain portions of his annuity payments due in 1999, 2001, 2003 and 2005 totaling $20,500. Relevant here, J.G. Wentworth was to retain $4,000 of the $8,000 payment due in 2005.
 {¶ 15} On July 29, 1997, the decedent received $5,131 in return for allowing J.G. Wentworth to retain additional sums from the 1998 and 1999 annuity payments totaling $8,400.
 {¶ 16} On January 28, 1998, the decedent received $7,000 in return for handing over $9,100 in additional portions of his annuity payments due in 1998, 1999, 2001 and 2003. Plus, J.G. Wentworth was to retain an additional $3,000 from the 2005 payment and $7,000 from each of the $8,000 payments payable in 2007, 2009 and 2011.
 {¶ 17} On October 28, 1998, the decedent entered his fifth and final purchase agreement whereby he received $5,597.80, thus providing the decedent with a total of $34,828.80 since the first purchase agreement in November 1996. Under the final agreement, J.G. Wentworth was to receive the remaining $1,000 from the payments due in 2001, 2005, 2007, 2009 and 2011. J.G. Wentworth was also to receive the *Page 6 
right to the entire $8,000 annuity payment due on 2013 and $45,000 ofthe $74,000 final annuity payment due on 2015. The decedent then signed a "testamentary agreement" binding his estate to the terms of the purchase agreements.
 {¶ 18} The decedent died on March 6, 2005. As of that time, J.G. Wentworth had received $48,500 and anticipated receiving another $85,000 (for the $34,828.80 advanced). Thereafter, Symetra split the $8,000 August 2005 annuity payment between the decedent's four daughters since they were named as the beneficiaries on the annuity contract.
 {¶ 19} On December 19, 2005, J.G. Wentworth filed a complaint for a declaratory judgment against the Christian beneficiaries and Symetra seeking a declaration of their rights to all sums covered by the decedent's purchase agreements. In February 2007, J.G. Wentworth voluntarily dismissed Symetra without prejudice. In March 2007, stipulations were filed, and the Christians and J.G. Wentworth filed competing motions for summary judgment.
 {¶ 20} Anticipating J.G. Wentworth's public policy arguments, the Christians initially pointed out that after the decedent entered the purchase agreements, the Ohio legislature prohibited purchases of structured tort settlements in the absence of strict compliance with the Ohio Structured Settlement Transfer Act. See R.C. 2323.58 through2323.587 (eff. Oct. 27, 2000). See, also, R.C. 2323.581 (no such structured settlement purchase is effective and no annuity issuer must make payments to a purchaser directly or indirectly unless that purchaser provided the payee with specific disclosures and unless the purchase agreement is pre-approved by final order of the court). The Christians acknowledged that this statute was inapplicable in the case at bar but cited it as evidence that Ohio policymakers recognize the problems involved when a sophisticated purchaser buys an annuitant's interest in a settlement.
 {¶ 21} The Christians' summary judgment motion then urged that the decedent's agreement with J.G. Wentworth was not binding on Symetra due to the anti-assignment clause. They noted that such clause was not solely for the decedent's benefit since it protected Symetra from multiple claims and thus decreased their liability risk, administrative burden and legal fees. *Page 7 
 {¶ 22} In the alternative, the Christians argued that the decedent's rights were governed by contract and that he had no contractual right to change the beneficiary of the annuity. As the owner, only Symetra had this right. Since the Christians (not the estate or J.G.Wentworth) were the beneficiaries at the time of the decedent's death, they are entitled to the remaining payments from the annuity.
 {¶ 23} The Christians pointed out that this suit does not involve a claim against the estate, which is the only entity liable for the decedent's contractual debts. Finally, the Christians urged that J.G. Wentworth cannot argue that Symetra should have changed the beneficiary to the decedent's estate in response to his letter because J.G. Wentworth was not a party to that contract and is not representing the decedent here.
 {¶ 24} J.G. Wentworth first countered by essentially stating that the Christians have no right to defend the suit. J.G. Wentworth then claimed that anti-assignment clauses violate the right to free assignment of contracts. J.G. Wentworth urged that the decedent had the absolute right to transfer the right to his payments and that the decedent's control over the annuity extended beyond his death due to his signing their purchase agreements and waivers. In the alternative, J.G. Wentworth argued that the decedent's estate was the last beneficiary.
 {¶ 25} The Christian daughters replied that they do not dispute the validity of the contract between the decedent and J.G. Wentworth; they only dispute where J.G. Wentworth's remedy lies and from whom/where they can collect. The Christians alternatively responded that the annuity's anti-assignment language was strong enough to void the purchase agreement.
 {¶ 26} On June 13, 2007, the trial court granted summary judgment in favor of J.G. Wentworth and thus denied the Christians' opposing motion for summary judgment. The Christian beneficiaries (hereinafter appellants) filed timely notice of appeal, setting forth the following assignment of error:
 {¶ 27} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE AND BY DENYING DEFENDANT/APPELLANTS' MOTION FOR SUMMARY JUDGMENT." *Page 8 
 {¶ 28} The parties generally reiterate most of the arguments they set forth below. After setting forth some basic law on annuities, we shall address the four main arguments before this court under separate headings.
 GENERAL LAW {¶ 29} Generally speaking, an annuity is an investment whereby a company is obligated to pay to the annuitant a sum of money over stated intervals in consideration of a gross sum that was previously paid for such an obligation. Bronson v. Glander (1948), 149 Ohio St. 57, 59. See, also, Trangenstein v. Wheaton College Bd. of Trustees,148 Ohio App.3d 382, 384, 2002-Ohio-2937 (an annuity is created by an agreement to pay a certain sum to the annuitant at certain times during life or for a given number of years in return for what is usually a single payment to the issuer of the annuity). An annuity is purely contractual in nature.Adams v. Adams, 12th Dist. No. CA2002-09-087, 2003-Ohio-3703, ¶ 15. Thus, its interpretation is subject to the regular rules of contract interpretation.
 {¶ 30} If a contract is reasonably susceptible to more than one meaning, then it is ambiguous and must be construed by the court. SeeShifrin v. Forest City Enterprises, Inc. (1992), 64 Ohio St.3d 635, 638. However, if the contract is not reasonably susceptible to more than one meaning, then extrinsic evidence is not permitted and the contract is enforced as written. See id. A clear and unambiguous contract can be enforced as a matter of law through summary judgment, and its interpretation is thereafter reviewed de novo. See Inland RefuseTransfer Co. v. Brown-Ferris Indus. of Ohio, Inc. (1985),15 Ohio St.3d 321, 322.
 WAIVER STANDING {¶ 31} Before arguing the anti-assignment clause is invalid, J.G. Wentworth sets forth various waiver and standing arguments. First, J.G. Wentworth argues that the decedent waived any protection of the anti-assignment clause. They point out that some courts, while finding an anti-assignment clause valid, still hold the assignor liable to the assignee under other equitable and legal principles. See, e.g., In reKaufman (2001), 37 P.3d 845, 2001 OK 88 (validating the clause but estopping the payee from asserting it). However, as will be discussed further below, this is not a case of an assignee (J.G. Wentworth) versus an assignor (the decedent) or even the assignor's *Page 9 
estate. There are other individuals with arguable rights involved here, and the issue is not merely the extent of the decedent's rights in the annuity during his lifetime but also after his death.
 {¶ 32} J.G. Wentworth then urges that Symetra waived any right to assert the anti-assignment language in the annuity documents because Symetra is no longer a party to this action and because J.G. Wentworth has already received payments from Symetra over the years. Firstly, J.G. Wentworth does not satisfactorily explain how their act of voluntarily dismissing Symetra just weeks before seeking summary judgment against appellants resulted in Symetra's waiver of a contractual term. Secondly, Symetra never knowingly made payment to J.G. Wentworth under the terms of the J.G. Wentworth purchase agreement. That is, the decedent changed his address with Symetra to a post office box, but his name alone
remained as the addressee and his name alone remained as the payee on the checks.
 {¶ 33} J.G. Wentworth continues that appellants cannot raise the anti-assignment language in the settlement agreement and the annuity contract because they were not parties to those original contracts. Notably, J.G. Wentworth was not a party to those contracts either, and they are the ones who sued appellants. Logically, if a party is in fact the appropriate defendant, then the plaintiff cannot preclude that party from raising these defenses to the action brought against them. As will be delved into further below, this is not a case of the beneficiaries of an estate trying to ignore a decedent's waiver of an anti-assignment clause in order to bar collection against the estate; it is a case of contractual transfer on death beneficiaries arguing the terms of the contract which governs their rights.
 {¶ 34} Contrary to J.G. Wentworth's suggestions, an intended third party beneficiary of a contract can bring an action on that contract. See, e.g., Grant Thornton v. Windsor House, Inc. (1991),57 Ohio St.3d 158, 161. Likewise, a beneficiary named on a non-probate asset is such an intended third party beneficiary of the contract governing that asset and thus has the concomitant power and standing to assert rights under the contract governing that asset. See Visintine Co. v. New York St.L. R. Co. (1959), 169 Ohio St. 505, 507 (noting that life insurance beneficiary has right to enforce contract as third party intended donee beneficiary). *Page 10 
See, also, Taylor v. First Natl. Bank of Cincinnati (1986),31 Ohio App.3d 49, 51 (beneficiary on decedent's payable on death savings account has standing to argue rights under deposit contract). Accordingly, we conclude that appellants have standing to raise defenses and arguments to support their claimed right to the annuity payments.
 ANTI-ASSIGNMENT CLAUSES {¶ 35} J.G. Wentworth's main argument is that due to the public policy favoring the free alienation of contracts, anti-assignment language is not enforceable if the contract does not specifically state that it is void upon assignment. They state there is no Ohio law on the subject and cite various cases from other states and federal courts that adopt Section 322 of the Restatement of Contracts. Section 322 provides that an anti-assignment clause does not prevent the assignee from acquiring rights in the contract unless a "different intent" is manifested but merely allows the non-assigning party to sue for any damages caused by the assignment.
 {¶ 36} Some state and federal courts have adopted Section 322. They hold that if the agreement limits the "power" to assign, then an assignment is void, but if it merely limits the "right" to assign, then the assignment is valid (and the non-assigning party can merely sue for any damages caused by the assignment). In order to manifest the "different intent" mentioned in Section 322, these courts hold that the anti-assignment clause must state that the assignment will be void or invalid, that the assignee shall acquire no rights, or that an assignment shall not be recognized. See, e.g., Rumbin v. Utica Mut. Ins.Co. (2000), 254 Conn. 259, 757 A.2d. 536, citing Bel-Ray Co., Inc. v.Chermrite Ltd. (3d Cir. 1999), 181 F.3d 435, 442. Thus, inRumbin, for instance, the court permitted assignment of the payee's rights to J.G. Wentworth (under the court approval section of the structured settlement act) where the anti-assignment clause merely stated that no payment may be assigned.
 {¶ 37} However, J.G. Wentworth does not claim that Ohio has adopted this Restatement section or case law holdings. In fact, Ohio has opted to merely adopt Section 317(2) of the Restatement of Contracts.Pilkington N.Am., Inc. v. Travelers Cas. Sur. Co., 112 Ohio St.3d 482,2006-Ohio-6551, ¶ 36. In Pilkington, the Ohio Supreme Court stated that it is well-established common law that all contract rights *Page 11 
may be assigned unless one of the following three exceptions applies in which case the assignment will not be enforced: (1) there is clear contractual language prohibiting assignment; (2) the assignment materially changes the duty of the obligor, materially increases the insurer's burden or risk under the contract, materially impairs the insurer's chance of securing a return on performance, or materially reduces the contract's value; or (3) the assignment is forbidden by statute or by public policy. Id., citing 3 Restatement of the Law 2d, Contracts (1981), Section 317(2), without mentioning Section 322.
 {¶ 38} Regarding the first exception, the Supreme Court cited with favor an appellate case stating that parties are bound by clear language prohibiting assignment such as, "This warranty is not transferable." Id., citing Mettler-Toledo, Inc. v. Republic Powdered Metals, Inc. (May 29, 1996), 9th Dist. No. 2500-M. Such language is no different from the clear language here stating that no payment shall be subject to assignment or no payment may be assigned.
 {¶ 39} Moreover, the annuity contract states that it is to be construed in accordance with the laws of the state in which the owner resides at the time of application. The owner is listed as Symetra with a Washington address. That state's position is that anti-assignment clauses are enforceable to void an assignment regardless of whether the contract specifically states that the contract is void upon assignment.Rapid Settlement, LTD v. Symetra (June 5, 2006), Wash. App. No. 5559-6-I (also stating that a state's structured settlement protection act does not abrogate an anti-assignment clause unless the act specifically provides as such). That court reviewed the cases and holdings cited by J.G. Wentworth here and determined that neither Washington nor North Carolina (the other state being evaluated) followed the Restatement approach. Id., citing Portland Electric Plumbing Co. v. Vancouver
(1981), 29 Wash. App. 292, 295, 627 P.2d. 1350 (which cited the dissent in the Rumbin case utilized by J.G. Wentworth in the case at bar). The Washington court concluded that the assignment was ineffective without Symetra's consent. (J.G. Wentworth cannot establish such consent merely by strategically dismissing the annuity company just before summary judgment motions were due.) *Page 12 
 {¶ 40} Accordingly, both Ohio and Washington enforce anti-assignment clauses where, as here, there is clear contractual language prohibiting assignment. Specifically, the settlement agreement provides:
 {¶ 41} "The amounts paid and to be paid to Claimant or to any other payee under this Agreement are his sole and separate property and no other person has any right or interest therein. No amount payable under this Agreement shall be subject to anticipation, assignment, sale, transfer, pledge, alienation, or encumbrance by any Claimant or by any other payee thereof, nor to attachment, seizure or legal or equitable process by any creditor of any Claimant or other payee prior to its actual receipt by such Claimant or other payee, nor may any such Claimant or other payee accelerate, defer, increase or decrease any amount payable under this Agreement."
 {¶ 42} The annuity contract states that Symetra is the owner of the annuity contract, and an endorsement provides that:
 {¶ 43} "An absolute assignment of this annuity contract will make the assignee the new owner of this annuity contract. We will not be bound by an assignment until written notice from the owner of this annuity contract is recorded at our home office.
 {¶ 44} "No payment under this annuity contract may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment."
 {¶ 45} This premise is repeated a second time in another part of the annuity contract. Elsewhere, the annuity contract provides: "Benefits payments may not be advanced, accelerated, commuted, or encumbered by the annuitant or any beneficiary." As such, both the settlement agreement and the annuity contract plainly prohibit assignment, at least before actual receipt by the annuitant.
 {¶ 46} Even if we employed some of the case law cited by J.G. Wentworth, we would conclude that the contract has sufficient language for enforcing the anti-assignment clause. See Rumbin, 254 Conn. 259, citing Bel-Ray, 181 F.3d at 442 (anti-assignment clause enforceable if it states that assignment shall not be recognized). That is, only the owner can assign the contract by an absolute assignment otherwise Symetra "shall not be bound." This language is equivalent to "shall not be recognized." See id. *Page 13 
 {¶ 47} J.G. Wentworth also claims that the assignment language is ambiguous because, after stating there is no right to assign, the settlement agreement then states that it is binding upon all parties, their successors and assigns. However, this fails to recognize that the contract permits assignment by the owner and also specifically allows assignment by the claimant after receipt of the payment. Hence, the concluding clause warned J.G. Wentworth that all are bound by the contract, including its anti-assignment clause barring assignment prior to the annuitant's receipt of payments. In any event, concluding boilerplate phraseology such as this does not make an otherwise clear anti-assignment clause ambiguous. See Adam I. Scales, Against Settlement Factoring? The Market in Tort Claims Has Arrived, 2002 Wis. L.Rev. 859, 91.
 ANNUITANT'S ASSIGNABLE RIGHTS {¶ 48} We note that appellants alternatively urge that they need not even rely on the anti-assignment clause since J.G. Wentworth is claiming to be the assignee of a stream of payments to which the decedent was not entitled. J.G. Wentworth provides an example of a decedent willing a truck to his nephew but selling the truck before he dies and points out that the nephew cannot then claim entitlement to the truck against the buyer. Appellants point out that the situation at bar is more akin to a person with a life estate trying to will the remainder of the estate after his death.
 {¶ 49} Under the plain language of annuity documents, Symetra was the owner of the annuity and the decedent was merely the annuitant with no right, no legal or equitable interest in the annuity itself, and no right to future payments unless he was alive at the time the payment was due; if he was deceased, then his named beneficiary had the right to the payment or his estate if there was no named beneficiary (or if the estate itself was the named beneficiary). In other words, an assignee only has the right of the assignor with both its advantages and disadvantages. See Res.2d of Contracts, 340, comment a.
 {¶ 50} Allowing the annuitant to replace an entity as the annuitant would not only violate the terms of the anti-assignment but would inappropriately change the measuring life for purposes of determining when the annuitant's rights to payments cease and another person's rights begin. Since the decedent had the right to the *Page 14 
scheduled payments while alive, but only the named beneficiary had the right to the scheduled payments thereafter, J.G. Wentworth should have ensured its place or the estate's place as a beneficiary before contracting with this decedent. Any entitlement to funds by J.G. Wentworth would be as a creditor of the estate, which is the only entity legally bound to cover the decedent's debts.
 {¶ 51} This conclusion is supported by the fact that non-probate assets are not part of the decedent's estate and thus are not liable forthe estate's indebtedness. In re Chadwick's Estate (1958),167 Ohio St. 373, paragraph three of syllabus (dealing specifically with an annuity). See, also, St. Vincent Charity Hosp. v. Mintz (Mar. 3, 1988), 8th Dist. No. 51031, 51057 (a payable on death account vests in the beneficiary at the time of the depositor's death and is not available to the creditors of decedent's estate); Taylor, 31 Ohio App.3d at 51-53 (beneficiary named on decedent's payable on death savings account became owner on decedent's death and had sole right to account proceeds to the exclusion of decedent's creditor who had probate orders regarding debt). Cf.Jamison v. Soc. Natl. Bank (1993), 66 Ohio St.3d 201 (providing an exception where the bank-creditor had possession of the collateral and thus a secured interest in the account).
 {¶ 52} An annuity with a beneficiary named in case of death is a non-probate asset. Chadwick's Estate, 167 Ohio St. at 374. See, also,Adams, 12 Dist. No. CA2002-09-087, citing Kopp v. Ohio Dept. of Job andFamily Services (Apr. 11, 2002), 8th Dist. No. 80041, 80081, 80232;Byrley v. Nationwide Life Ins. Co. (1994), 94 Ohio App.3d 1; In reWelsh's Estate (1960), 177 N.E.2d 710, 86 Ohio Law Abs. 549;Abernethy v. Abernethy (Ala. 1992), 611 So.2d 1021; Estate ofPeterson (Cal. 1994), 28 Cal.App.4th 1742, 34 Cal.Rptr.2d 449;Bergheger v. Boyle (Ill. 1994), 258 Ill.App.3d 413, 196 Ill.Dec. 324,629 N.E.2d 1168. Thus, at the annuitant's death, the rights of the annuitant become the rights of the named beneficiary.[1]
 {¶ 53} Since the beneficiary receives the right to collect future payments under the terms of the annuity immediately upon the decedent's death, no will, purchase *Page 15 
agreement or "testamentary agreement" can change the effect of a transfer on death such as this. Just as the breach of contract to make a will does not void the will (it merely allows a creditor claim against the estate), a breach of contract to name a transfer on death beneficiary does not void the non-probate beneficiary designation. See, e.g., In re Estate of Dawson (1996), 117 Ohio App.3d 51, 56 (2d Dist.), citing Ohio Jur.3d 1981, Decedent's Estates, Section 502;Georgekopoulous v. Vasilopoulous (1984), 26 Ohio App.3d 43, 44
(9th Dist.). Thus, contrary to J.G. Wentworth's contentions, the beneficiary of the annuity is entitled to the remaining annuity payments.
 PROPER BENEFICIARY {¶ 54} Anticipating our holding that their remedy is against the estate rather than appellants, J.G. Wentworth next argues that the estate is the true beneficiary pursuant to the last correspondence the decedent provided on such matter. As aforementioned, the original beneficiary was listed in the annuity application as the decedent's estate. When the decedent asked to change the beneficiary to his four daughters, Symetra approved this change as the owner but warned that the beneficiaries' approval would now be required before any future beneficiary changes would be approved. Under the terms of the settlement agreement and pursuant to the annuity application, Symetra was the owner of the annuity, and the decedent was merely the annuitant. As outlined above, the contract specified that although he had a right to the payments, he had no legal or equitable interest in the annuity itself. When the decedent later sought to change the beneficiary back to his estate for purposes of his J.G. Wentworth purchase agreement, Symetra refused based upon the decedent's failure to comply with their prior request for release by the beneficiaries.
 {¶ 55} J.G. Wentworth urges that Symetra established a method for changing the beneficiary by acting on his first written request for a beneficiary change. This argument ignores the instructions provided by Symetra regarding future changes. As such, J.G. Wentworth next contends that there is no indication that the decedent received the letters from Symetra detailing the beneficiary change procedure and thus Symetra's attempt at placing requirements on the change was ineffective. However, *Page 16 
because J.G. Wentworth dismissed Symetra, it cannot maintain arguments such as these against Symetra's rights.
 {¶ 56} In any event, these arguments by J.G. Wentworth ignore the fact that under the plain language of the annuity contract, only the owner ofthe annuity had the right to change the beneficiary. Since Symetra was clearly the owner, they could contractually act to refuse the beneficiary change requested by the decedent. Because the owner did not in fact change the beneficiary from appellants to the decedent's estate, appellants remained the proper beneficiaries for purposes of determining to whom the future annuity payments were payable.
 CONCLUSION {¶ 57} In conclusion, J.G. Wentworth was a sophisticated party who should have ascertained ownership of the annuity and should have realized the existence of the beneficiary issue from the language of the annuity contract and application. They should have ensured the beneficiary was in fact changed to themselves or to the estate before entering purchase agreements; and upon receiving the annuity company's later communications refusing to change the beneficiary, they should have refused to enter further purchase agreements with the decedent unless he resolved the issue to their satisfaction (with their assistance if need be). Instead, they continued advancing money to a person who was not the owner of the annuity, who only had rights during his lifetime, and who had beneficiaries named other than his estate.
 {¶ 58} Appellants had a right to raise the anti-assignment clause as third party intended beneficiaries. Anti-assignment clauses are valid under both Ohio and Washington law. The anti-assignment clause here was clear and prohibits J.G. Wentworth from replacing the decedent as the annuitant. This left J.G. Wentworth with the rights as a creditor of the decedent and then the decedent's estate. The fact that J.G. Wentworth is a creditor of the decedent does not give them superior rights over the named beneficiaries to whom the right to further payments transferred upon the decedent's death. Finally, the dismissed annuity company was the owner, who had the sole contractual right to change the beneficiary. *Page 17 
 {¶ 59} For the foregoing reasons, the trial court's entry of summary judgment for J.G. Wentworth is reversed. Summary judgment is hereby entered in favor of appellants.
Donofrio, J., concurs.
Waite, J., concurs.
[1] This is the reason J.G. Wentworth had the decedent attempt to change the beneficiary back to his estate. Without seeking proof that the beneficiary had in fact changed and regardless of the fact that two letters refusing this beneficiary change were sent by Symetra to both the decedent's home address and to J.G. Wentworth's post office box, J.G. Wentworth continued to enter new purchase agreements with the decedent. *Page 1