In the Matter of the Estate of Anthony Jaysas, also Known as Jasas, Deceased.
George B. Cohen and Helen Irene Cohen, Co-partners, Petitioners-Appellants, v. John L. Spalding, Guardian ad Litem on the Final Account, Appellee.

Gen. No. 48,423.

First District, First Division.
December 28, 1961.
Rehearing denied January 31, 1962.

George B. Cohen and Helen Irene Cohen, of Chicago, for appellants, pro se.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (John L. Spalding, pro se, and Owen Rall, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a direct appeal from the Probate Court of Cook County. Petitioners, George B. Cohen and Helen Irene Cohen, attorneys, appeal from an order fixing their fees for services rendered the administrator of the estate of a decedent. They contend the fee allowance is inadequate.

On April 20, 1959, Anthony Jaysas, an employee of the Commonwealth Edison Company, died intestate. On April 23, 1959, Franklin J. Palt was appointed administrator of the estate on the nomination of decedent's sister and sole heir at law, Helen Jaysas. On November 4, 1959, the sister, Helen Jaysas, was declared incompetent, and Palt was appointed conservator of her estate. Petitioners are attorneys for Palt in both capacities.

On May 27, 1959, Palt filed an inventory of the assets of decedent's estate. Fourteen items of personal property were listed, with a total valuation of $24,952.83. The five principal items were: two savings and loan association accounts, totalling $10,630.28; 38 shares of the common stock of Northern Illinois Gas; 170 shares of the common stock of Commonwealth Edison Company; and a credit union deposit of $1,340. The remaining nine items were minor and consisted of goods and chattels, terminal wages, stock dividends and several small refunds. No real estate was inventoried.

On February 9, 1960, Palt, as administrator, filed an Illinois inheritance tax return and a federal estate tax return. Both returns scheduled joint tenancy property at its full value of $37,464.02. This included a parcel of real estate valued at $25,000, scheduled as having been conveyed on March 25, 1953, by decedent's sister to Palt, and by Palt conveyed to decedent and his sister in joint tenancy. The other joint tenancy items consisted of U. S. Savings bonds, totalling $3,356.28, and two savings and loan association accounts, totalling $9,107.74. The debts listed consisted of a funeral bill of $819.70 and routine expenses of administration including fees. The Illinois inheritance tax amounted to $568.66. There was no federal estate tax.

On June 8, 1960, John L. Spalding, an attorney, was appointed by the Probate Court of Cook County to act as guardian ad litem for the incompetent sister and heir at law, in the hearing on the final account of Palt, as administrator of the estate of decedent. On July 25, 1960, Spalding signed a receipt for $75 for his guardian ad litem fee in the final account hearing, without having seen or examined the final account. Shortly thereafter on or about August 1, 1960, Spalding saw a copy of the final account for the first time and learned that petitioners, without notice to him, had appeared in the Probate Court on July 14, 1960, and on the petition of the administrator, secured a court order granting leave to pay the sum of $1,000 for services as administrator, and to pay to petitioners the sum of $5,000 for their services in decedent's estate, being "ordinary probate and the additional 238½ hours of extraordinary services itemized in petitioners' Exhibit 1." This exhibit is a detailed time schedule, commencing April 21, 1959, and extending to June 14, 1960.

On August 9, 1960, Spalding presented a motion in the Probate Court, asking that the order for fees entered on July 14, 1960, "be vacated and set aside for failure to give notice to the undersigned, heretofore appointed guardian ad litem for Helen Jasas on June 8, 1960." On August 11, Spalding filed objections to the final account of Palt, alleging the administrator's commission of $1,000 to be excessive and the fees of $5,000 for the attorneys to be "exorbitant and excessive."

The final account of Palt, as administrator, was filed in the Probate Court on August 23, 1960, showing total receipts to be $27,215.98. This includes the inventory value of $24,952.83. The balance consists of a number of minor items, principally dividends on the stock shares. The disbursements include the funeral bill of $819.70, routine administration expenses, the adminis-

trator and attorney fees, with a final balance of $19,251.70, payable to the estate of the incompetent sister and heir at law.

On September 27, 1960, Palt filed a petition as administrator, charging that the guardian ad litem was not a disinterested person within the meaning of the statute and was causing the waste of estate funds "as a matter of personal enmity and in his efforts to settle other litigation," and prayed that Spalding be removed as guardian ad litem on the final account and denied any compensation. Spalding answered this petition, vigorously denying the charges and requesting that it be denied and dismissed.

After a number of delays, court appearances and hearings, into which many extraneous matters were injected, attended with much abuse heaped upon the guardian ad litem, the court, on its own motion, struck the petition to remove Spalding as guardian ad litem. The hearing on the objections to the fees began on December 6, 1960, and terminated with an order entered on December 21, 1960, in which the court vacated the fee order of July 14, 1960, sustained the objections of Spalding to the final account of the administrator, and fixed the attorneys' fees at $3,150, Spalding having previously withdrawn his objection to the administrator's fee of $1,000.

During the hearing as to fees, both petitioners testified at length as to their services for the administrator. Their testimony shows that on April 29, 1959, George B. Cohen made proof of heirship in the estate of the decedent, based upon a business acquaintance-ship with the Jaysas family for a period of thirty-three years; that thereafter he and his daughter, Helen Irene Cohen, the other petitioner, made an extended search for a possible widow of the decedent, because of information given them by the sister; that decedent's sister had no knowledge of his affairs, which were left

in a chaotic condition, requiring "an exhaustive search for assets"; that the Illinois inheritance and federal estate and income tax returns required much time in preparation and hearings; that many consultations were had with the administrator and with a representative of Commonwealth Edison Company, who was endeavoring to assist in the administration of the estate; that petitioner, George B. Cohen has been an attorney for fifty-one years; that he does not consider looking for assets, checking their values or making up state or federal tax returns as ordinary probate services.

 The amount to be paid to an attorney for services rendered by him for an administrator or an executor is a matter peculiarly within the province of the Probate Court, and the Probate Act of 1939 authorizes the allowance of "reasonable compensation" for such services. (Ill Rev Stats 1959, c 3, § 491.) This amount is to be determined by the court in the exercise of judicial discretion. Each case must rest upon its own facts and circumstances, and no hard and fast rule has been or can be laid down in determining what would be a reasonable attorney fee in each case. (In re Estate of James (1956), 10 Ill App2d 232, 241, 134 NE2d 638.) The factors to be considered include the size of the estate, the work done and the skill with which it was performed, the time required, and the advantages gained or sought by the services or litigation. Good faith, diligence and reasonable prudence should be included, so as to prevent, on the one hand, excessive charges, and, on the other hand, inadequate allowances. No general rule can be laid down as to what particular amount may be held to be reasonable, inadequate or excessive. 33 CJS 1225, § 227.

██ ██ The Probate Court has the requisite skill and knowledge to determine what is fair and reasonable compensation for the services of an attorney. While the number of hours asserted to have been expended in labor for an estate is an important factor, experience

292

in such matters makes it possible for a probate judge to make a reasonable approximation of the amount of time which various steps in estate settlement should properly consume. In the exercise of its judicial discretion, the court is not to be wholly controlled by the opinions of attorneys as to the value of services. It should, to a great extent, exercise an independent judgment in determining attorneys' fees to be paid out of a decedent's estate. (In re Estate of Klappa (1958), 18 Ill App2d 501, 505, 506, 152 NE2d 754; In re Estate of James, 10 Ill App2d 232, 240, 134 NE2d 638.) In order to alter a fee allowance made by a trial court, a reviewing court is required to find that the determination of the trial court is manifestly or palpably erroneous. It requires "a plain case of wrongful exercise of judgment" to permit a reviewing court to alter the allowance. In re Estate of McCalmont (1958), 16 Ill App2d 246, 256, 259, 148 NE2d 23.

We have scrutinized the charges made against the guardian ad litem and believe that they are not sustained by the record. The evaluating of fees was an important part of the duties of the guardian ad litem, who was appointed specifically to represent the best interests of the incompetent in the matter of the hearing of the final account. He would have been guilty of a grave violation of the duties of his appointment and the ethics of his profession if he failed to object to fees which he believed to be "exorbitant and excessive." His judgment in this respect was sustained when the trial court, after an extended hearing, vacated the attorneys' fee allowance of $5,000 and determined that the proper fee should be $3,150.

We have examined in detail the time schedule and the testimony of both petitioners as to their routine and extraordinary services. Considered in the light of the factors previously detailed, we have come to the conclusion that the allowance of $3,150 is not manifestly or palpably erroneous. It is more than a

minimum fee and adequately covers the extraordinary services related by petitioners. We think it adequate and reasonable compensation in this case. We believe that our determination has rendered it unnecessary to consider and discuss other contentions made by petitioners.

It is unfortunate that so much time, expense and energy have been consumed in this case in the determination of "reasonable compensation" for petitioners. We agree with the contention of the petitioners that "there should be an end to litigation, especially this sort of litigation."

For the reasons given, the order of the Probate Court entered December 21, 1960, is affirmed.

Affirmed.

BURMAN and ENGLISH, JJ., concur.