*In re* ESTATE OF MARGARET L. PARLIER, Deceased.—(LARRY J. FLYNN, d/b/a Flynn and Flynn, *et al.*, Petitioners-Appellees, *v.* GEORGE R. PARLIER, Objector-Appellant.)

Fourth District   No. 13239

Opinion filed July 22, 1976.—Rehearing denied September 14, 1976.

CRAVEN, J., dissenting.

John L. Knuppel, of Virginia, for appellant.

Larry J. Flynn, of Flynn & Flynn, of Jacksonville, for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

On May 7, 1974, the Circuit Court of Morgan County admitted the will of Margaret L. Parlier to probate and appointed Marie McGinnis and Wilma Fern Werries as executors. Upon completing the administration of the estate, the executors filed a final report which indicated that a total fee of $5,776.44 had been paid to the executors to be split equally between them and that a fee of $6,283.06 had been paid to their attorney. George R. Parlier, who with Marie McGinnis, shared equally the residue of the estate objected to these fees. After a hearing, the court approved the report including the provision for fees. The objector, George R. Parlier, appeals, raising only the question of the propriety of the fees.

The assets of the estate consisted of property of a value of about $200,000, more than half of which was farm land. The work done by the executors and their attorney was that which would be usual for an estate of this nature except that there was a public sale of the farm land and that the attorney for the executors spent some time in conference with two different attorneys who had represented the objector. Larry J. Flynn, the attorney for the executors, testified that he did not keep a record of time spent working on matters connected with the estate but computed his requested fees on a percentage of the value of the assets of the estate pursuant to a sliding scale schedule of fees recommended by the county and State bar associations. He said that he followed the schedule because he felt that it was fair and reasonable and not because of any compulsion.

William T. Wilson and Harry Story, lawyers with over 40 and 25 years experience in probate matters respectively, testified in support of the requested attorney's fees and stated that they considered the fees to be usual and customary and fair and reasonable. Mr. Wilson stated that because of the land sale involved, he would have charged more, and Mr. Story testified that it would be customary to do so. Both stated that the usual practice was to keep no record of the hours spent working on an estate but to charge upon the basis of the value of the estate's assets. Mr. Wilson testified that he did not think any bar association schedule of fees was presently in operation but that he considered an old schedule used in the past by the Morgan County Bar Association in forming his opinion as to the reasonableness of the fee.

Executor Wilma Fern Werries is the daughter of executor Marie McGinnis. Mrs. Werries testified concerning the work done by them describing the record keeping, receipt of interest, sale of grain and other

personal property and real estate, payment of bills and general farm management involved. She also described the work that both of them had done preparing for a sale of personal property. No complete time records were kept. Mrs. Werries was employed as a bookkeeper at a bank. The fee for the executors was listed in the report and referred to in the testimony as one fee to be split equally between the two executors. Trust officers from two local banks testified that they considered the fee to be fair and reasonable and what would customarily be received for such services.

■■■ Although objector introduced no evidence in opposition to the approval of the fees, he maintains that the evidence of the executors was insufficient to prove the reasonableness of any of the fees. In describing the proper method of determining the amount of reasonable fees for the attorney of an executor or administrator the following pronouncement of an appellate court of this State is pertinent:

"The factors to be considered include the size of the estate, the work done and the skill with which it was performed, the time required, and the advantages gained or sought by the services or litigation. Good faith, diligence and reasonable prudence should be included, so as to prevent, on the one hand, excessive charges, and, on the other hand, inadequate allowances." *In re Estate of Jaysas*, 33 Ill. App. 2d 287, 292, 179 N.E.2d 411, 413-14.

No witness here was able to place an estimate upon the hours spent by the attorney for the executors on behalf of the estate. The trial judge, however, was in a position to make a reasonable estimate of the time that would be normally required to perform the work shown to have been done. (*In re Estate of Jaysas.*) Objector argues that the attorney's fee should relate closely to the remuneration that a lawyer would receive if charging on an hourly basis at a rate that he would receive for other work billed on an hourly basis. Some lawyers have decided that the fairest and best way to charge for probate work is on an hourly basis. None of the lawyers here, however, testified to such a practice and no case has been called to our attention that requires such a method. The hourly rate procedure does not take into consideration that the greater the value of the property involved, the greater the responsibility of the lawyer. It tends to reward the slower practitioner and does not recognize that a lawyer spends time even in leisure moments pondering the problems of his client. The failure to keep time records or to closely relate the fee requested to charges for other work that would have required a similar expenditure of time did not negate the reasonableness of the fee charged.

Objector also calls our attention to the case of *Goldfarb v. Virginia State Bar Association*, 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004. He does not directly contend, however, that the decision in that case, of itself,

makes the award of attorney's fees here erroneous. In *Goldfarb* a fee schedule issued by the county bar association of a Virginia county as applied to real estate transactions was held to be price fixing in violation of section 1 of the Sherman Act. (15 U.S.C. §1.) All Virginia lawyers are required by law to be members of the State bar association. That group had issued an ethics opinion which indicated that habitual undercutting of the fees schedule might be a grounds for sanction. Plaintiffs were a married couple who, after diligent search, had been unable to find a lawyer willing to represent them in a residential real estate transaction at less than the fee schedule rate. The court found interstate commerce to be affected because most of the money to finance residential real estate in that county came from outside the State. The court ruled that the legal profession was not exempt from the Sherman Act and held the Act to apply.

In the instant case the requested fee had been computed from an old fee schedule at one time put out by a bar association. There was no showing of any compulsion to use it, however. Neither was there any showing of uniformity in following it. Indeed, Mr. Wilson testified that he would have made an additional charge for the services rendered in the sale of the real estate. The facts of this case are clearly distinguishable from those in *Goldfarb*.

■■ Court determination of reasonable fees for lawyers and other professionals is not easy. Consideration can be given to the education, skill, knowledge, ability and experience required and the expense involved in providing the service. Disciplinary Rule 2-106B(3) of the A.B.A. Code of Professional Responsibility (as amended, February 1975) lists as a factor in determining the reasonableness of a fee, "The fee customarily charged in the locality for similar legal services." Here the evidence was that the attorney's fees requested were the usual and customary charges. Unquestionably past issuance of a bar association fee schedule has a bearing on the present customary charges made. The effect of *Goldfarb* will in time reduce this. Another inescapable result of *Goldfarb* is that competition will become a greater factor in determining the method of computing the amount of fees usually charged. As these changes occur, the court can consider them in passing judgment on fees. For the present, however, the existing usual and customary rate is a necessary point of reference.

Much that we have said about the attorney's fee also applies to the executors' fee. Measured by the hours actually spent at specific tasks, the compensation would be large. As with the attorney's fees, however, such computation fails to consider the responsibilities involved. Objector also claims that since the executors were not professional fiduciaries, they were not entitled to a fee that professionals would receive. The testimony of the trust officers was that the total executors' fee was a customary fee.

Here, rather than naming one professional fiduciary, the testator named two persons who were not professionals. The testator may have felt that each would have a particular function to fulfill. The trial judge could have found that the performance of the executors in their dual capacity gave as much of value to the estate as would one professional fiduciary.

■■ ■ "In order to alter a fee allowance made by a trial court, a reviewing court is required to find that the determination of the trial court is manifestly palpably erroneous." (*In re Estate of Jaysas*, 33 Ill. App. 2d 287, 293, 179 N.E.2d 411, 413-14.) Here the trial judge could consider not only his estimate of the time involved but also the size of the estate, the fact that a public sale of real estate was conducted and that the estate was efficiently administered. The fees requested by executors and the attorney were those usual and customary for the services rendered. We do not find the approval of these fees to be an abuse of discretion. The judgment is affirmed.

Affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:
I dissent.

I would remand this case to the circuit court for a determination of the attorney's fees and executor's fees upon a standard relating solely to the reasonable value of such services and upon a consideration of the factors enumerated in *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897. Upon remandment, the circuit court should be given directions that it is inappropriate and improper to consider or refer to a schedule of fees for either the attorney or the executor.

In *Goldfarb*, the United States Supreme Court rather clearly indicates that fee schedules, even if advisory, are not permissible standards for fixing fees. See 7 Loyola U. Chi. L. J. 254 (1976).

The record in this case indicates that the fees for the attorney and the fees for the executor were determined by reference to and reliance upon a fee schedule. Furthermore, the fees allowed appear to be upon a percentage of the gross estate rather than solely upon a determination of the reasonable value of services rendered.