*In re* MORGAN WASHINGTON HOME, Trustee of the John M. Scott Industrial School Trust.—(MORGAN WASHINGTON HOME, Petitioner-Appellee, *v.* TYRONE C. FAHNER, Attorney General, Respondent-Appellant.)

Fourth District   No. 4—82—0041

Opinion filed August 5, 1982.

Tyrone C. Fahner, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of counsel), for appellant.

Ralph Turner, of Luedtke, Hartweg & Turner, of Bloomington, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

At issue in this case is the determination of a fee for attorneys who represented a charitable entity in complicated chancery litigation pursuant to a contingent fee contract. The Attorney General of this State, appearing in discharge of his statutory and common law duty to protect the assets if charitable trusts situated in this State, has appealed from an order fixing the fees. The order was entered by the circuit court of McLean County pursuant to the petition of Morgan Washington Home, a not-for-profit corporation, and trustee of the John M. Scott Industrial School Trust, requesting determination of the fees to be paid by them to the law firm of Luedtke, Hartweg, and Turner. The circuit court found the sum of $92,200, requested in the petition, to be a reasonable fee. We affirm.

The chancery suit began on August 12, 1977, when the trustee of a substantial trust created under the will of an Illinois jurist, John M. Scott, brought suit in the above court seeking instructions with reference to the disposition of the residue. Petitioner, Morgan Washington Home, intervened in that suit claiming entitlement to the residue. The details of this litigation are set forth in our opinion in *Burr v. Brooks*

(1979), 75 Ill. App. 3d 80, 393 N.E.2d 1091, and in the opinion of the supreme court in affirming that decision and remanding to the circuit court (*Burr v. Brooks* (1981), 83 Ill. 2d 488, 416 N.E.2d 231). Upon remand the circuit court entered an order awarding petitioner a portion of the residue of the estate. The parties agree that the value of the award was approximately $3,110,000. On November 23, 1981, petitioner filed in the circuit court a declaration of trust creating the John M. Scott Industrial School Trust. On December 7, 1981, the court entered an order assuming jurisdiction of the trust.

The Attorney General maintains on appeal that because the fees would be paid from the corpus of a charitable trust, they should be moderate, based almost entirely on time involved and should not be enlarged because of their contingent nature. Because the fees did not meet that standard, he deems them excessive. He also asserts that the information presented concerning the services performed and the time spent by petitioner's attorneys was not presented in sufficient detail.

As explained in *Burr*, petitioner was an alternate beneficiary under the trust created by the Scott will and took only upon (1) the failure of a gift to the City of Bloomington, and (2) the ability of petitioner to qualify under the terms of the instrument. Evidence at the hearing on the petition concerning fees showed that the Luedtke, Hartweg, and Turner firm was not regular counsel for petitioner but was selected because of their competency and because they had no close connection to any adverse interests. The evidence also showed that petitioner's directors gave thorough consideration to the best method of arranging for fees. Originally, agreement was reached that the attorneys would work for a small retainer with the balance of their fees being contingent. When a trial court award to petitioner was reversed on appeal and the case remanded to the trial court, a new, fully contingent fee arrangement was worked out. At that time the strength of petitioner's claim was almost as uncertain as at the start of the litigation. The petitioner's directors had decided that they could afford the substantial fees inherent in litigation of this nature only if the fees were contingent upon the recovery of sums from which the fees could be paid.

The second fee arrangement was reduced to a written document providing for fees in a percentage of the amount recovered. The applicable percentage was dependent upon the subsequent course of the litigation. under the course the litigation took, the agreement provided the attorneys would receive five percent of the first $1,000,000 of recovery and two percent of any additional recovery. The fee awarded

was that to which the attorneys would have been entitled under the agreement. However, the trial court indicated it recognized the agreement was not binding on it, and it was required to determine a fee that was reasonable. The fee awarded was supported by the testimony of David Wochner, a lawyer practicing in matters involving probate, corporations, and taxation, who stated the fee was reasonable in his opinion.

In support of his contention that the fees for an attorney representing a charitable trust must be moderate and based predominantly upon time spent, the Attorney General cites *In re Estate of Thompson* (1967), 426 Pa. 270, 232 A.2d 625, *Murphey v. Dalton* (Mo. 1958), 314 S.W.2d 726, *In re New York Investors, Inc.* (2d Cir. 1935), 79 F.2d 182, *In re Crawford's Estate* (1931), 307 Pa. 102, 160 A. 585, and *Wemme v. First Church of Christ, Scientist* (1924), 111 Or. 386, 227 P. 277. In *Thompson,* a fee for an attorney for a charitable trust was fixed at a figure less than the amount agreed upon in a contingent fee contract, but the amount of the fee appeared to reflect the contingent nature of the fee. In *Murphey,* the court disregarded the contingent nature of the arrangement for fees of an attorney for a charitable trust. However, funds of the trust had been pledged to assure the attorney he would receive some fees. *New York Investors* concerned the fees of attorneys for debtors' estates in bankruptcy proceedings. In such cases, the lawyers are assured of some fees at the outset of their employment. In *In re Crawford's Estate,* the court upheld an attorney's original fee request while stating by way of *dictum* that fee awards should be moderate.

We see little in the above cases from other jurisdictions which would (1) require the fees here to be reduced to a level described by the Attorney General as moderate, or (2) require the contingent nature of the fee agreement to be disregarded. No cases from this State so requiring have been called to our attention. The Code of Professional Responsibility (79 Ill. 2d R. 1—101 *et seq.*) did not become effective until July 1, 1980, after the last contingent fee contract was agreed upon. However, it is helpful for guidance. It gives no indication that attorney fees for representation of a charitable entity should be anything less than what a reasonable fee would be, nor does it give any indication that the charitable nature of the client restricts the use of contingent fee contracts. Rule 2—106(c) (79 Ill. 2d R. 2—106(c)) recognizes the propriety of the contingent fee contracts under proper conditions except in certain criminal and matrimonial matters. Rule 2—106(b)(8) states "whether [a] fee is fixed or contingent" is a factor to consider in determining its reasonableness. 79 Ill. 2d R. 2—106(b)(8).

In complicated matters such as those involved in *Burr,* the quality of legal services available to charitable entities would deteriorate if those entities were limited in obtaining counsel to those who would volunteer to work at a rate less than that usually paid by others for similar litigation. The quality would also suffer if the entity could not contract with attorneys on a basis whereby any fee would have to come from recovery obtained from the litigation. Charitable entities are no different than other clients in this respect. Rule 2—106(c) is a recognition of this need. The rule is applicable to fee contracts with charitable entities. The fees approved here were not improper for being immoderate nor because they were enhanced due to their contingent nature.

Rule 2—106(b)(4) still permits consideration of "the amount involved and the results obtained" (79 Ill. 2d R. 2—106(b)(4)) in litigation in determining reasonable attorney fees. However, supreme court decisions of the past decade concerning attorney fees in the somewhat similar field of class actions have indicated that the first step in measuring the reasonableness of a fee is to determine the number of hours properly spent by the attorneys and the usual hourly rate for services of that caliber. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1.) As explained most recently in *Fiorito,* once a figure is obtained by multiplying the hours spent by the appropriate rate, a further adjustment should be obtained by use of a multiplier to reflect the contingent nature of the fees and the results obtained. The court indicated that a multiplier of over three could seldom be justified and that usually it should be lower.

Here, the evidence indicated that almost all of the work was performed by attorney Ralph Turner, and that only the hours of his work were set forth in the affidavit supporting the petition. It set forth that he spent 762.8 hours. The evidence showed his usual charge for work of this nature varied during the course of the litigation from $50 to $60 per hour. Such a rate was shown to be reasonable. Applying the first step of the *Fiorito* test, and giving a $60 rate to all hours, a figure of approximately $46,000 would be obtained. A multiplier of slightly over two would produce a fee of $92,000 as awarded. Even if an hourly rate of only $50 were applied, a multiplier of about 2.4 would indicate a fee of approximately that awarded. The outcome of the litigation was very uncertain, and the result was excellent from the standpoint of petitioner. The fees awarded met the test of *Fiorito.*

Although the Code of Professional Responsibility was not in force throughout most of this litigation, the fee arrangement here would also meet its test. Although the percentage of amount recovered is now given less significance than formerly in judging the reasonableness of fees, it is significant here that the highest percentage bracket in the fee agreement was only five percent.

The Attorney General complains that the attorney's affidavit of hours spent filed in support of the petition for fees lacked sufficient detail. He cites the following itemization as an example:

> "Prepare for pre-trial conference in case and, in accordance with Court's instructions at pre-trial conference, prepare pre-trial memorandum outlining the issues of the case, and research necessitated thereby.                        79.8
>
> Preparation of Appellee's brief in response to brief of Appellant City of Bloomington in the Fourth District Appellate Court, preparation of reply brief to cross-appeal by Bloomington Board of Education.                        133.3
>
> Prepare Petition for Leave to Appeal to the Supreme Court and prepare response to Petition for Leave to Appeal filed by City of Bloomington, research and file supplemental brief to Supreme Court.                        133.3."

Greater detail might be desirable. However, the theory that greater focus should be put upon the hours spent in determining fees gained greater force during the course of the litigation here. Under the circumstances, we hold the itemization to be adequate.

Greater itemization would require producing voluminous time sheets. One of the purposes of itemization is to determine whether the hours spent are unnecessary duplications of those of others. (*Fiorito*.) Here, petitioner's position in the litigation was different than and adverse to the other parties. Although more than one member of the law firm spent some time in advising on the case, the testimony indicated that all of the billing was for the services of one attorney. Thus no problems of possible duplication of work existed. Furthermore, the record of the litigation itself supports the substantial number of hours charged.

As the fees were shown to be reasonable and proper, we affirm their award.

Affirmed.

MILLS and TRAPP, JJ., concur.