NO. 4-10-0338    Opinion Filed 5/20/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| In re: the Estate of RONALD D. WEEKS, Deceased, DAVID W. HAMMER, Independent Executor of the Estate of RONALD D. WEEKS; and THOMAS L. BRUCKER, Petitioners-Appellants, v. THE PEOPLE OF THE STATE OF ILLINOIS ex rel. LISA MADIGAN, Attorney General of Illinois, Intervenor-Appellee. | Appeal from Circuit Court of McLean County No. 08P78 Honorable Stephen R. Pacey, Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Turner and Pope concurred in the judgment and opinion.

**OPINION**

In April 2008, petitioner, David W. Hammer, was appointed independent executor of decedent Ronald D. Weeks's estate.  Hammer hired petitioner, Thomas L. Brucker, to serve as his attorney with respect to administering the estate.  In their final accounting of the estate, petitioners indicated they had withdrawn fees from the estate in the amount of $120,000 for executor Hammer and over $170,000 for attorney Brucker.  Intervenor, the Attorney General of Illinois, objected to the requested fees on behalf of an out-of-state charity.  After a hearing, the trial court reduced the fees for executor Hammer to $37,500 and those for attorney Brucker to $75,000 and otherwise approved the final accounting.  The court ordered petitioners to refund the excess fees withdrawn from the estate.

On appeal, petitioners argue the trial court erred in its interpretation of what constitutes a "reasonable" fee under sections 27-1 and 27-2 of the Probate Act of 1975 (Act) (755 ILCS 5/27-1, 27-2 (West 2008)).  Petitioners assert the court erroneously concluded the Act *per se* prohibits attorneys and executors from charging a fee based on a percentage of the estate's gross value.  Intervenor responds the court applied the appropriate factors based on controlling precedent and correctly determined petitioners' requested fees were unrelated to the value of the work petitioners performed in administering the estate.  We affirm.

## I. BACKGROUND

In March 2008, Ronald D. Weeks died testate.  The gross value of Weeks's estate was $4,024,361.  The value of Weeks's probate assets was $3,042,706.16.  The nonprobate assets were largely comprised of payable on death (POD) assets and joint accounts held by Weeks and another person.  In his will, Weeks made several specific bequests and divided his residuary estate among three beneficiaries: 50% to Teri Witten, 25% to Charles Schott, and 25% to Disabled and Alone Life Services for the Handicapped, Inc., a New York charity.  Weeks's will named Hammer as the executor of his estate, and Hammer later hired Brucker as his attorney with respect to estate-administration matters.  In April 2008, the will was admitted to probate and letters of office were issued to executor Hammer, who was appointed independent administrator of the estate.

Weeks's probate assets consisted of cash, certificates of deposit, a residence, farmland, a farmstead, and personal property.  Petitioners had Weeks's real estate appraised.  Weeks's residence was initially appraised at $145,000.  A real estate agent estimated the sale price would be between $100,000 and $105,000.  After petitioners discovered a deficiency in its foundation, Weeks's house was reappraised at $125,000.  When the real estate agent received bids of no higher than $106,000 with a $6,000 limit on repairing the foundation flaw in the basement, petitioners transferred the residence in kind to Schott, the residuary beneficiary, as part of his share of the estate's residue at a value of $101,000.  In connection with the transfer, the estate paid a 6% commission and $500 in legal fees.

Weeks's farmland was initially appraised at $2,076,450, or $5,324.23 per acre.  Petitioners decided they could sell it, divided into two parcels, for more than the appraised value by conducting a sealed-bid auction before the deadline for filing the estate-tax return in December and before the crop was harvested.  Attorney Brucker conducted the auction.  He sought a minimum bid of $6,500 per acre.  One parcel sold for $1,527,500, or $6,500 per acre, and the other for $990,168.75, or $6,525 per acre.  Brucker received an attorney fee of 2% of the sale price, or a total of $50,353.37, for acting as auctioneer.

The will granted Weeks's farm tenant and his wife an option to purchase the farmstead at its appraised value.  The tenant initially rejected the option but later changed his mind

and purchased the farmstead for $173,000 after petitioners had it surveyed to ensure the purchased land included a certain hedgerow the tenant found desirable. The estate paid $900 in legal fees for this transaction.

In December 2008, executor Hammer filed federal and state estate-tax returns. These filings were accepted by the Internal Revenue Service (IRS) and intervenor, respectively, and Hammer was accordingly discharged of his personal liability for the state estate tax.

In July 2009, petitioners served an accounting of Weeks's probate estate's receipts and disbursements on Weeks's heirs and legatees. The accounting showed gross receipts of $3,042,706.16, including bank holdings and proceeds from the sales of Weeks's real and personal property. The estate had disbursed $2,333,365.46, including $120,000 each distributed to petitioners for attorney and executor fees and partial distributions of the estate's residue ($800,000 to Witten and $400,000 each to Schott, including the in-kind transfer of the residence, and Disabled and Alone). Attorney Brucker's $120,000 in attorney fees was in addition to the fees he collected in connection with the real-estate sales. In July and August 2009, residuary beneficiaries Schott and Witten entered their appearances in the probate matter, waived the filing of an accounting, and consented to and petitioned for the discharge of Hammer as "Independent Executor."

In July 2009, after receiving petitioners' accounting,

Brian Andrew Tully, an attorney for Disabled and Alone, inquired into the appropriateness of the fees withdrawn by petitioners. Tully asked attorney Brucker to provide Disabled and Alone with a copy of petitioners' retainer agreement and "a detailed explanation as to fees and disbursements, including hours billed and hourly rates." Tully expressed surprise regarding the size of the executor fees, explaining an executor in New York would receive approximately $85,000 for administering an estate the size of Weeks's. Brucker responded, "With respect to attorneys' fees and executor's fees paid, the fees were based upon 3% of the gross estate of $4,024,361.00, which is the standard rate when an estate is this large and a [federal estate-tax] Form 706 return is required." Tully responded, again requesting a copy of petitioners' retainer and questioning petitioners' decision to base their fee on the value of the gross taxable estate rather than the probate estate. Tully noted, "This practice is unusual, as non-probate assets pass by operation of law and are therefore not considered part of the estate administration. Also, Executor's [*sic*] commissions are usually based on the assets actually received and accounted for by the Executor."

Later, in another letter, Tully requested a copy of the estate's federal estate-tax return and informed Brucker the default rule in New York was for tax-exempt organizations not to bear any of the estate tax, which petitioners had apportioned among the residuary beneficiaries in proportion to their shares under the will. Brucker refused the requests for copies of the

retainer and the tax return and again informed Tully of his standard practice of charging 3% of the gross estate where a tax return is required, noting (1) his fees had been accepted by the IRS and probate courts and (2) "[n]umerous other attorneys in the area adopt a similar fee schedule."

In September 2009, executor Hammer filed his final report with the trial court, requesting the estate be closed. In the report, Hammer stated "reasonable" executor and attorney fees had been paid and these fees had been "approved by all interested persons." Later that month, intervenor petitioned to intervene on behalf of Disabled and Alone pursuant to section 2-408 of the Code of Civil Procedure (735 ILCS 5/2-408 (West 2008)). Intervenor sought to move to terminate independent administration of Weeks's estate and sought an inventory and an accounting, including a full accounting of petitioners' fees. Intervenor also filed a "MOTION TO WITHHOLD APPROVAL OF EXECUTOR'S FINAL ACCOUNT UNTIL INVENTORY AND ACCOUNTING ARE FILED WITH THE COURT AND SERVED ON THE ILLINOIS ATTORNEY GENERAL."

In October 2009, executor Hammer filed a response to intervenor's pleadings. Hammer asked the trial court to dismiss the pleadings and "prohibit the Attorney General from entering in this case as a matter of right." Hammer argued intervenor was petitioning on behalf of an out-of-state corporation rather than on behalf of the people of Illinois. Alternatively, Hammer argued intervenor waived any objections to the requested executor and attorney fees by issuing a discharge of Hammer's estate-tax

liability.  Hammer filed with the court the July 2009 inventory and accounting.

Later in October 2009, following a hearing, the trial court granted intervenor's petition to intervene and terminated independent administration of the estate.  That same month, intervenor filed an objection to the accounting and to the approval of the final report, challenging the amount of the requested executor and attorney fees.  Specifically, intervenor challenged the $120,000 fees paid to each petitioner and the $50,353.37 fee paid to attorney Brucker in connection with the sale of the farmland.

In December 2009, the trial court held a hearing on intervenor's objection.  The evidence before the court consisted of 17 exhibits and testimony by petitioners' expert, attorney Thomas Herr, and each petitioner.  Among the exhibits, each of petitioners' witnesses presented affidavits, the contents of which were covered in their testimony.

Herr testified he had been practicing law for 17 years concerning trusts, estates, tax, and business planning.  He worked on estates ranging in value from insolvency to more than $20 million.  It was customary in his practice and among attorneys in Livingston and Ford Counties to charge a percentage of the gross value of the estate.  Regarding the type of fee charged, Herr said, "I've seen ranges based on a local bar fee schedule to a flat percentage of the estate, graduated percentage, so it[--]and an hourly basis, so it's all over--it's all

across the board in terms of what I've seen being charged in estates."  Herr testified his hourly rate for complex estates was $275.  He said an "average estate" consists of transferring assets and clearing the title to real estate.  In contrast, a "complex estate," according to Herr, may involve preparing an estate-tax return, which "can take a hundred or more hours of work or in excess of that," performing a special-use valuation, or handling income-tax issues, will contests, or charitable bequests.

Attorney Brucker testified regarding his experience as an estate lawyer and the work he performed in helping executor Hammer administer Weeks's estate.  Brucker testified his hourly rate for estate work was $250 to $300.  He said he typically charges 3% of the gross value of an estate if a federal estate-tax return is required.  Brucker testified to having known Weeks "for many, many years" and having "handled" the estates of Weeks's mother and wife, while Brucker's firm had "handled" Weeks's father's estate.  He testified to performing work for the estate as summarized above, including work done in transferring personal and real property, preparing and filing tax-related and other legal documents, unsuccessfully defending a $2,000 claim against the estate, and drafting and mailing correspondence.

He testified to time constraints in meeting filing deadlines with respect to tax forms which, according to Brucker, imposed corresponding time concerns in selling Weeks's real estate.  Brucker asserted his billing the estate for 2% of the

value of Weeks's farmland for conducting the sealed-bid auction was "customary and appropriate." He estimated his selling the property himself and charging a 2% fee saved the estate $25,000.

Brucker directed the trial court's attention to several prior probate cases. He testified he collected fees in some of the cited trial-level cases ranging from 2.5% to 3.2%. None of those fees was subject to objection by a beneficiary. He also pointed out the court itself approved a fee at a rate of $300 per hour in a previous case.

On cross-examination, intervenor inquired into an exhibit purporting to be a group of billing statements. Brucker testified these statements were not actually bills. They were partly a running tabulation of work performed for the estate and partly a reconstruction by Brucker's secretary. Brucker did not keep time records for work done on Weeks's estate as he planned to bill on a "percentage basis" since a federal estate-tax return was required.

Executor Hammer testified regarding his duties in administering Weeks's estate. Hammer had been vice president and trust officer of a bank in Fairbury, Illinois, for 16 years. As a trust officer of the bank, Hammer worked as executor on "approximately a dozen" estates ranging in value from a few thousand dollars to $7 million. Hammer testified to his involvement in accounting for, managing, and distributing Weeks's estate's assets. He continued to work full time for the bank while administering Weeks's estate, traveling between Fairbury and

Weeks's residence in Normal in the evening or on a weekend two to three times each week. With respect to the tasks listed in Hammer's affidavit in support of his executor fees, Hammer testified he constructed the list from files and notes he kept of his work for the estate. Hammer estimated he spent between 500 and 600 hours administering Weeks's estate. It did not occur to Hammer to maintain time records with respect to the estate's administration because it was customary of his bank's trust department to bill on a graduated scale, based on the size of the estate, between 2.5% and 5% of the estate's gross value.

After the parties' arguments, the trial court remarked orally about the evidence and arguments. The court rejected testimony of petitioners' expert stating a reasonable fee could be established by reference to a fee schedule. The court found such reliance on fee schedules was precluded by *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975). The court noted the expert did not testify he reviewed the work done for Weeks's estate nor did he give an opinion as to the reasonableness of the requested fees. The court noted the sale of farmland at auction for more than its appraised value may have benefitted the estate, but the benefit accrued from the sale should have inured to the estate and not to attorney Brucker in the form of an "additional" 2% fee.

In its February 2010 written order, the trial court made specific findings with respect to each of the factors it considered relevant in determining a reasonable fee for each

petitioner. The court considered "factors on which evidence was introduced, as well as the Court's own knowledge of the value of services rendered in probate cases." Regarding attorney Brucker, the court found as follows:

> "[T]he size of this estate was above average, the work done was completed in a timely and (excepting the sealed bid sale of farmland) professional manner, the time required (no time records having been kept) should not have exceeded 300 hours, no special advantage was gained or sought by the estate, the amount of compensation is not sought in good faith and the reasonable hourly rate for attorney's fees in this type of case is $250.00 per hour."

Regarding executor Hammer, the court found:

> "[T]he size of this estate was above average, the services rendered were not unusual, the responsibilities undertaken were ordinary, the degree of difficulty was average, there was little risk involved, no unusual knowledge or skill was required, the degree of expertise of the executor is well above average, the estimated time (no records having been kept) appears to exceed what should have been required, the amount of compensation is

not sought in good faith and the reasonable
hourly rate for an individual executor with
experience in this type of case is $75.00 per
hour."

Accordingly, the court awarded attorney fees in the amount of
$75,000 and executor fees in the amount of $37,500.  The court
ordered petitioners to refund to the estate any fees withdrawn in
excess of the awarded amounts within 30 days, approved the final
account in all other respects, stated no other fees were to be
paid from the estate without a petition accompanied by detailed
time records and court approval, and precluded petitioners from
using estate funds to pursue an appeal.  The order thus required
Brucker to refund $95,000 and Hammer to refund $82,500.

In April 2010, the trial court denied petitioners'
motion to reconsider and granted petitioners' motion to stay
enforcement.

This appeal followed.

## II. ANALYSIS

On appeal, petitioners argue the trial court erred in finding their requested
fees unreasonable.  Petitioners assert the court erroneously found it *per se*
unreasonable for an executor and his attorney to base their fees on a percentage of the
estate's value.  Intervenor responds this court lacks jurisdiction because of a deficiency
in petitioners' notice of appeal and, alternatively, the court applied the appropriate
factors for determining a reasonable fee and did not err.  Petitioners reply, with respect
to intervenor's jurisdiction argument, any deficiency in their notice of appeal was

technical and does not deprive this court of its appellate jurisdiction. We reject intervenor's jurisdiction argument but agree with intervenor's argument the court did not err.

## A. Jurisdiction

We first address intervenor's jurisdiction argument. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213, 902 N.E.2d 662, 664 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the is- sue."). Intervenor argues this court lacks jurisdiction because the party named in the notice of appeal, the estate of Ronald D. Weeks, lacks standing to appeal. Intervenor claims petitioners should have been the named appellants. Petitioners respond the deficiency in the notice of appeal is merely "a technical misnomer, which does not justify the dismissal of this appeal." We agree with petitioners.

Jurisdiction in this court is conferred by a notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Illinois Supreme Court Rule 303 (eff. May 30, 2008) sets forth specific formatting and filing requirements of the notice of appeal. Among other things, a notice of appeal must name the parties and designate them "in the same manner as in the circuit court and add[ ] the further designation 'appellant' or 'appellee'" (Ill. S. Ct. R. 303(b)(1)(ii)) and must "contain the signature and address of each appellant or appellant's attorney" (Ill. S. Ct. R. 303(b)(4)). However, "Illinois courts have repeatedly refused to dismiss an appeal because of a technical deficiency in the notice of appeal so long as the notice fulfills its basic purpose of informing the victorious party that the

˘ 13 ˘

loser desires a review of the matter by a higher court." *In re Estate of Weber*, 59 Ill. App. 3d 274, 276, 375 N.E.2d 569, 570 (1978).

Petitioners' failure to name themselves as appellants in the notice of appeal, while technically deficient, did not deprive intervenor of the notice to which she was entitled. Intervenor does not allege she was prejudiced in any way by petitioners' naming the estate rather than themselves as appellants. We will address the merits of petitioners' argument.

## B. "Reasonable Compensation"

We consider petitioners' argument the trial court erred by holding an executor and his attorney are *per se* precluded from basing their fees for administering an estate on a percentage of the estate's value. Intervenor maintains the court relied on appropriate precedent in concluding petitioners' requested fees were unreasonable. The court applied the relevant factors in determining the reasonableness of petitioners' requested fees, and we agree with intervenor.

In general, "[a] trial court has broad discretionary powers in awarding attorney fees and its decision will not be reversed on appeal unless the court abused its discretion." *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44, 578 N.E.2d 985, 990 (1991). But *cf. In re Estate of Coleman*, 262 Ill. App. 3d 297, 299, 634 N.E.2d 314, 316 (1994) ("The trial court has broad discretion in determining what constitutes 'reasonable' compensation. [Citation.] Because the probate court has the requisite skill and knowledge to decide what is fair and reasonable compensation [citation], a probate court's determination of such fees will not be overturned on appeal unless it is manifestly and palpably erroneous." (Internal quotation marks omitted.)). Insofar as

petitioners claim the trial court made an error of law, our review is *de novo*. See *Beehn v. Eppard*, 321 Ill. App. 3d 677, 680-81, 747 N.E.2d 1010, 1013 (2001) ("Where a trial court's exercise of discretion relies on an erroneous conclusion of law, *** our review is *de novo*.").

Under the Probate Act, executors and their attorneys are entitled to "reasonable compensation" for their administration of the estate. 755 ILCS 5/27-1, 27-2 (West 2008). What constitutes reasonable compensation in relation to the value of the services rendered must be determined on a case-by-case basis. *In re Estate of Thorp*, 282 Ill. App. 3d 612, 619, 669 N.E.2d 359, 364 (1996). "The factors to be considered include the size of the estate, the work involved, the skill evidenced by the work, [the] time expended, the success of the efforts involved, and the good faith and efficiency with which the estate was administered." *Id.*; see also *In re Estate of Jaysas*, 33 Ill. App. 2d 287, 292, 179 N.E.2d 411, 413 (1961) ("Good faith, diligence and reasonable prudence should be included, so as to prevent, on the one hand, excessive charges, and, on the other hand, inadequate allowances."). These considerations apply to compensation for executors and their attorneys alike. See, *e.g.*, *Thorp*, 282 Ill. App. 3d at 620, 669 N.E.2d at 364-65 (applying the factors to an executor's fee petition); *Jaysas*, 33 Ill. App. 2d at 293-94, 179 N.E.2d at 414 (applying the factors to attorneys' fee petition).

The most important factor is the amount of time spent on the estate. *Coleman*, 262 Ill. App. 3d at 299, 634 N.E.2d at 316. Ideally, the petitioners will present contemporaneously made, detailed time records as evidence of "the services performed, by whom they were performed, the time expended thereon and the hourly rate

charged therefor."  (Internal quotation marks omitted.)  *In re Estate of Bitoy*, 395 Ill. App. 3d 262, 273, 917 N.E.2d 74, 83 (2009).  If such records are unavailable, the trial court can approximate the amount of time such tasks should require by using its particular knowledge of probate matters.  *Id.* at 272-73, 917 N.E.2d at 82; see also *Jaysas*, 33 Ill. App. 2d at 293, 179 N.E.2d at 413 ("[The probate court] should, to a great extent, exercise an independent judgment in determining attorneys' fees to be paid out of a decedent's estate.").

   Petitioners presented *no* evidence of the time spent administering Weeks's estate although executor Hammer estimated he spent over 500 hours.  They each testified extensively to the work they performed.  The trial court, considering the relevant evidence, determined some of petitioners' work overlapped.  Noting especially attorney Brucker's involvement in the auction sale of Weeks's farmland for which he charged the estate 2% of the land's value for auction services while charging 3% of the land's value as part of his overall fee, the court found petitioners performed duplicative work and did not seek their fees in good faith.  Petitioners presented no testimony characterizing the work performed on Weeks's estate as unusual or complicated.  The court found, based on petitioners' testimony and their expert's failure to give an opinion as to the reasonableness of the fees sought, attorney Brucker should have spent no more than 300 hours working for the estate and executor Hammer should have spent no more than 500 hours.  Based on its own knowledge, and within a range consistent with testimony by Brucker and petitioners' expert Herr regarding their hourly billing rates, the court found a reasonable hourly fee for attorney Brucker would have been $250 and for executor Hammer $75.  The court's analysis is consistent with precedent,

and we conclude the court did not abuse its discretion.

Petitioners argue the trial court relied on an erroneous proposition of law. Namely, petitioners contend the court erroneously relied on *Goldfarb* in ruling petitioners' requested fees were not reasonable. In *Goldfarb*, 421 U.S. at 781, 792-93, the Supreme Court held a state bar association's employment of a mandatory fee schedule enforced upon all attorneys throughout the state violated federal antitrust laws prohibiting price fixing. We disagree with petitioners' contention the court misapplied *Goldfarb*.

Petitioners' case for charging a percentage of the gross value of Weeks's estate consisted of, on attorney Brucker's behalf, evidence a 3% fee was *usual* and *customary* for estates the size of Weeks's with reference to the Livingston County Bar Association's fee schedule and to Brucker's own practice and, on executor Hammer's behalf, evidence the bank where Hammer worked as trust officer charged estates on a percentage basis between 2.5% and 5% of the estate's gross value, depending on its size. The court relied on *Goldfarb* for the limited purpose of discrediting Brucker's evidence his 3% fee was supported by a local bar association's fee schedule. If the court accepted this evidence and had not relied on *Goldfarb*, the court could still have concluded the requested fees were unreasonable, despite being usual and customary, as the reasonableness of a fee is determined with respect to the factors relied upon by the trial court.

Petitioners' cited cases are not compelling. The first case petitioners cite is *In re Estate of Parlier*, 40 Ill. App. 3d

840, 354 N.E.2d 32 (1976). In that case, decided shortly after *Goldfarb*, the executors' attorney requested fees based on a percentage of the estate's value. *Id.* at 841, 354 N.E.2d at 34. The attorney fees were set in reference to an advisory fee schedule promulgated by a local bar association. *Id.* The objector argued the attorney fees should have been computed as if the attorney were billing on an hourly basis. *Id.* at 842, 354 N.E.2d at 35. This court disagreed, stating:

> "Some lawyers have decided that the fairest and best way to charge for probate work is on an hourly basis. None of the lawyers here, however, testified to such a practice and no case has been called to our attention that requires such a method. The hourly rate procedure does not take into consideration that the greater the value of the property involved, the greater the responsibility of the lawyer. It tends to reward the slower practitioner and does not recognize that a lawyer spends time even in leisure moments pondering the problems of his client. The failure to keep time records or to closely relate the fee requested to charges for other work that would have required a similar expenditure of time did not negate the reasonableness of the fee charged." *Id.*

The court rejected the objector's argument *Goldfarb* prohibited the attorney from establishing his fee by reference to a fee schedule, distinguishing its case from *Goldfarb* as the fee schedule was not compulsory and was not shown to be followed uniformly. *Id.* at 843, 354 N.E.2d at 35. The court considered the fee schedule as valuable evidence of the usual and customary fee. *Id.* at 843, 354 N.E.2d at 35-36. This court upheld the trial court's award of the requested fee. *Id.* at 844, 354 N.E.2d at 36.

This case is distinguishable from *Parlier* in at least three respects. First, *Goldfarb* is no longer recent precedent. In *Parlier*, 40 Ill. App. 3d at 843, 354 N.E.2d at 35-36, this court stated, "Unquestionably past issuance of a bar association fee schedule has a bearing on the present customary charges made. The effect of *Goldfarb* will in time reduce this." The passage of time since *Goldfarb* was decided draws *Parlier*'s relevance into question with respect to its permissive reliance on fee schedules.

Second, and relatedly, in *Parlier*, 40 Ill. App. 3d at 843, 354 N.E.2d at 35-36, we relied on an American Bar Association disciplinary rule, inflating the importance of usual and customary charges in the balancing of the factors to be considered in setting a "reasonable" fee under the Act. While the disciplinary rule quoted in *Parlier* and the relevant current rule (Ill. S. Ct. Rs. of Prof. Conduct 1.5 (eff. Jan. 1, 2010)) each list the amount customarily charged in the locality for similar

services as a factor to be considered in setting a fee, more recent cases interpreting the meaning of "reasonable compensation" under the Act omit this factor.  See, *e.g.*, *Thorp*, 282 Ill. App. 3d at 619, 669 N.E.2d at 364 (listing the relevant factors).

Third, in *Parlier*, 40 Ill. App. 3d at 842, 354 N.E.2d at 35, this court stated, "None of the lawyers here[ ] *** testified to [billing probate work by the hour] and no case has been called to our attention that requires such a method."  In contrast, both attorney Brucker and petitioners' expert Herr testified to billing some probate estates by the hour.  Herr never expressed an opinion regarding the propriety of billing on a percentage basis other than to say it is customary among some attorneys practicing in central and northern Illinois. Moreover, intervenor cites at least one case suggesting a reasonable fee *cannot* be determined without reference to an hourly billing rate.  See *Bitoy*, 395 Ill. App. 3d at 275, 917 N.E.2d at 84 (noting what tasks were done, by whom they were done, and the time reasonably spent doing them "are necessary to the probate court's determination of the reasonableness of the fee" in a probate case).  In light of these distinctions, the trial court in this case did not err by disregarding the local bar association's fee schedule purporting to support the reasonableness of the requested attorney fees.

The second case petitioners cite in support of their argument the trial court erred as a matter of law is *In re Morgan Washington Home*, 108 Ill. App. 3d 245, 439 N.E.2d 34 (1982).  In

that case, the petitioning law firm represented a charity seeking to take as a residuary beneficiary under a will.  The trial court awarded $92,200 in attorney fees pursuant to the contingent-fee arrangement in the retainer agreement between the firm and the charity.  *Id.* at 245, 439 N.E.2d at 34-35.  Under the agreement, the firm was to receive 5% of the first $1 million recovered for the charity and 2% of any further recovery.  *Id.* at 246, 439 N.E.2d at 35.  This court affirmed, employing the "*Fiorito* test." *Id.* at 248, 439 N.E.2d at 36-37; see *Fiorito v. Jones*, 72 Ill. 2d 73, 377 N.E.2d 1019 (1978).  Under that test, an appropriate contingent fee is determined in two steps.  First, the court must "determine the number of hours properly spent by the attorneys and the usual hourly rate for services of that caliber." *Morgan Washington Home*, 108 Ill. App. 3d at 248, 439 N.E.2d at 36. Second, "a further adjustment should be obtained by use of a multiplier to reflect the contingent nature of the fees and the results obtained."  *Id.*  The multiplier should, as a rule of thumb, be less than three.  *Id.*  In *Morgan Washington Home*, 108 Ill. App. 3d at 248, 439 N.E.2d at 36-37, this court found the evidence showed an attorney for the firm worked 762.8 hours at a rate of $60 per hour; as such, a multiplier of about two would produce the $92,200 fee awarded.  Further, we noted, "The outcome of the litigation was very uncertain, and the result was excellent from the standpoint of petitioner."  *Id.*, 439 N.E.2d at 37.

Petitioners assert *Morgan Washington Home* supports their 3% fee in this case.  This case is readily distinguishable.

First, unlike attorney Brucker, the attorneys in *Morgan Washington Home* were not working for the estate's executor. Second, the attorneys in *Morgan Washington Home* performed complex litigation and attained a great reward for their client. In contrast, Brucker's only litigation in this case was the unsuccessful defense of a $2,000 claim against the estate characterized by the trial court as uncomplicated. The court found Brucker's work for the estate was not extraordinary or unusual. Third, and perhaps most significantly, the fees in *Morgan Washington Home* were contingent. The attorneys there would have recovered nothing if they did not successfully prosecute a highly disputed claim. In contrast, Brucker decided to charge his 3% fee because of the size of the estate, the fact a federal estate-tax return would be required, and numerous other attorneys follow a similar fee schedule. In light of these distinctions, *Morgan Washington Home* does not compel a different result in this case.

This court concluded almost three decades ago "[i]t is now well established that fees may not be determined on the basis of fee schedules." *First National Bank of Decatur v. Barclay*, 111 Ill. App. 3d 162, 163, 443 N.E.2d 780, 781 (1982). Clearly, an award of fees in this case should have been based on the time spent by petitioners, the complexity of the work they performed, and their ability. We conclude that is what the trial court did.

### III. CONCLUSION

We affirm the trial court's judgment.

Affirmed.

˅ 22 ˅