*In re* ESTATE OF NEIL COLEMAN, Deceased (J. Barton Kalish, Ex'r of the Estate of Neil Coleman, Petitioner-Appellant).

Second District    No. 2—93—0696

Opinion filed May 10, 1994.

James H. Pluymert, Case Hoogendoorn, and David A. Shaneyfelt, all of Hoogendoorn, Talbot, Davids, Godfrey & Milligan, of Chicago, for appellant.

Bogdan Martinovich, of Ray & Glick, Ltd., of Libertyville, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The petitioner, J. Barton Kalish, appeals from the ruling of the circuit court of Lake County granting him $15,967.50 for work as the executor of the estate of Neil Coleman. The petitioner sought $80,000. We affirm.

Coleman died on July 3, 1991, leaving an estate of approximately $8 million. The petitioner, a Chicago attorney and a long-time friend of Coleman, was named executor of the estate. He also served as co-executor of an irrevocable trust set up by Mr. Coleman prior to his death. After disagreements arose between the petitioner and members of the Coleman family, the petitioner resigned as executor of the estate and trust on November 25, 1991, prior to the closing of the estate.

During the time he acted as executor, the petitioner made several payments from the Coleman estate and/or trust to himself for his services totalling $75,000. The petitioner did not notify the beneficiaries of the estate at the time he made the payments to himself. When he took money from the trust, he did not obtain the consent of a cotrustee, as required by the trust instrument.

On February 24, 1992, the petitioner filed in the probate division of the circuit court a petition for allowance of executor's and attorney fees of $80,000. He deducted the $75,000 he had paid himself prior to resigning as executor. The petitioner estimated that he worked 400 hours on estate matters and charged $200 per hour. The Coleman estate filed a response to the petition objecting to the fees.

The circuit court conducted a four-day probate hearing on the petition, after which it ruled that the petitioner was entitled to $15,967.50. The court determined that the petitioner had actually worked 106.45 hours as executor of the Coleman estate and was entitled to an hourly fee of $150. The petitioner appealed from that judgment.

The petitioner claims that the circuit court improperly reduced his fee as punishment for his making payments to himself from the

Coleman trust and estate without authority or notice to the heirs. The petitioner contends that this action by the circuit court was not based on either the law or facts of the case, although he admits that it was "a mistake in client relations" for him not to notify the heirs. The petitioner further claims that the trial court erred by reducing the number of hours for which he was entitled to payment from 400 to 106.45 without giving any indication how it arrived at the lower figure. Finally, the petitioner claims the trial court erred in underestimating the complexity of the Coleman estate and the skill and time required by him to function as executor.

■ Executors are entitled to "reasonable compensation" for their services. (Ill. Rev. Stat. 1991, ch. 110¹/₂, pars. 27—1, 27—2 (now 755 ILCS 5/27—1, 5/27—2 (West 1992)); *In re Estate of Marshall* (1988), 167 Ill. App. 3d 549, 553.) The trial court has broad discretion in determining what constitutes "reasonable" compensation. (*In re Estate of Johnson* (1991), 219 Ill. App. 3d 962, 967.) Because "the probate court has the requisite skill and knowledge to decide what is fair and reasonable compensation" (*In re Estate of Brown* (1978), 58 Ill. App. 3d '697, 707), a probate court's determination of such fees will not be overturned on appeal unless it is "manifestly or palpably erroneous." *Marshall*, 167 Ill. App. 3d at 553.

In determining what is a reasonable fee, no clear-cut rules exist. Rather, the determination must be based on the facts and circumstances of the particular case. (*In re Estate of Miller* (1990), 197 Ill. App. 3d 67, 71.) The factors to be considered include "the size of the estate, the work involved, the skill evidenced by the work, time expended, the success of the efforts involved, and the good faith and efficiency with which the estate was administered." (*Marshall*, 167 Ill. App. 3d at 553, citing *In re Estate of Thomson* (1986), 139 Ill. App. 3d 930, 939.) Further, the trial court is not bound by the opinion of expert witnesses as to the reasonableness of fees, but may rely on its own knowledge and experience and exercise its independent judgment. *Miller*, 197 Ill. App. 3d at 71.

A review of the trial court's decision in this matter reveals that the court carefully weighed all of the *Marshall* factors and based its decision on a reasonable interpretation of the evidence. Although it is true, as the petitioner argues in his brief, that the circuit court found great fault with his removal of funds from the Coleman estate and trust without notice or approval, the court did not evince an improper desire to punish the petitioner.

The amount of time expended by a party requesting a fee is the most important factor in determining reasonable compensation. (*In re Marriage of Reczek* (1981), 95 Ill. App. 3d 220, 222.) In actions to

recover compensation for legal services, the burden of proof rests with the attorney to establish his case. *Bank of Alton v. Bowman* (1990), 198 Ill. App. 3d 329, 331.

Here, the petitioner testified at length about the number of hours he worked and his system for keeping track of his time, but he provided no clearly itemized bill. Rather, the petitioner offered his daily activity records, a long, rambling narrative of his time spent on the estate. The court found that these records failed "to in any way establish the underlying time" that he billed to the estate. The court also determined that the work recorded within the petitioner's bill and his testimony during the hearing were "totally inconsistent" with his claim that he worked 400 hours on the estate.

The court examined the petitioner's bill and determined that it indicated he worked a total of 75 days on the estate. If the petitioner had worked a total of 400 hours, he would have spent $5^1/_2$ hours a day on estate matters. The court declared that this possibility was "totally inconsistent, both with the testimony of Mr. Kalish himself, and with the work recorded within the body of his statement."

■ The court undertook its own calculations based on the petitioner's daily records and extrapolated how much time could reasonably be attributed to the duties detailed in the bills. In doing so, the court came up with 106.45 hours. The court allowed an hourly fee of $150, which it noted was the standard rate of such work in the jurisdiction. The court also noted that its calculations were in line with an estimate from an expert at the hearing as to how much money the petitioner should have been paid. The expert said that, given the size and complexity of the Coleman estate, an executor should have been able to complete work on the estate for $50,000. The expert estimated that there was about $10,000 worth of work remaining to be done when the petitioner resigned as executor. Deducting the $10,000 needed for completion of estate work from the base fee of $50,000, along with $14,757, which was spent by the estate to research matters relating to a fire insurance settlement to the estate, and another $10,000 in accounting fees paid by the estate for Federal income tax work, the petitioner would be left with $15,242.90. This figure is close to that which the court set under its own calculations. We believe the trial court's computations constitute a well-reasoned approach and certainly were not manifestly erroneous.

Neither was the court's determination that the petitioner was entitled to an hourly fee of $150 manifestly erroneous. The petitioner argued that his $200 hourly rate was actually below what he charged for other services. He further maintained that although he was inexperienced in probate matters, he was highly experienced and skilled

in the areas of financial planning and commercial law, skills which were most important given the complexity of the Coleman estate.

In addition to noting that $150 per hour was the standard fee in the jurisdiction for an executor, the court determined that the petitioner lacked skill in the areas of law most important for the task of executor. There was evidence to support this conclusion in that the petitioner left numerous tasks undone that he should reasonably have completed before resigning. There was further evidence that the petitioner may have handled certain tax matters improperly, though he denied this.

There was conflicting testimony as to the complexity of the Coleman estate. The petitioner described the estate as complex and requiring great skill in a variety of areas of the law to handle. The estate countered that careful estate planning by Coleman prior to his death arranged for nonprobate disposal of most of his assets, thus rendering the estate's administration relatively simple. The trial court determined that much of the work done by the petitioner was "ministerial" and required minimal legal skill.

As to good faith and diligence, we have already noted the trial court's finding that the petitioner demonstrated a lack of good faith by paying himself some $75,000 in fees from the Coleman estate and trust without approval or notice to the heirs. We believe this finding is well supported by the evidence.

The petitioner argues in his brief that the Probate Act of 1975 (755 ILCS 5/18—10 (West 1992)) "imposes no legal duty whatsoever on the executor to report his fees to the court or to the heirs and beneficiaries during the course of the administration of the estate." This begs the question. Just because something is legal does not mean it is necessarily proper, especially considering that, as the executor of the Coleman estate, the petitioner had "a fiduciary duty to act with the highest degree of fidelity and utmost good faith in handling estate assets." (*In re Estate of Pirie* (1986), 141 Ill. App. 3d 750, 758.) Such fiduciaries must exercise at least that degree of skill and diligence that the reasonably prudent person devotes to his own similar personal affairs. (*Johnson v. Village of Libertyville* (1986), 150 Ill. App. 3d 971, 974-75.) As one of the *Marshall* factors in determining the reasonableness of attorney fees, the petitioner's lack of good faith was properly considered by the trial court.

Lastly, the trial court was well within its discretion in basing its decision in part on the credibility of the witnesses at the probate hearing. The trial judge is in a superior position to determine the credibility of the witnesses and the weight to accord their testimony. (*Magnone v. Chicago & North Western Transportation Co.* (1984), 126

Ill. App. 3d 170, 176.) On appeal, the reviewing court will take questions of testimonial credibility as resolved in favor of the prevailing party and must draw from the evidence all reasonable inferences that support the judgment. (*Apollo Heating & Air Conditioning Corp. v. American National Bank & Trust Co.* (1985), 135 Ill. App. 3d 976, 978-79.) A reviewing court will not substitute its judgment unless that decision is not supported by the evidence. *Aetna Insurance Co. v. Amelio Brothers Meat Co.* (1989), 182 Ill. App. 3d 863, 865.

The trial court here made specific findings as to credibility and determined that the petitioner's testimony was "quite frankly not very credible," and found it "at times nonresponsive; at times inconsistent; at times seemingly rehearsed; and of a self-serving nature." There is evidence in the record to support this conclusion.

In sum, our review of the record and the factors outlined in *Marshall* for determining the reasonableness of fees convinces us that the trial court's findings were not against the manifest weight of the evidence.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and PECCARELLI, JJ., concur.