**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180739-U

Order filed October 7, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* ESTATE OF RONALD A. REEDER, Deceased | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| (Gery R. Gasick, Executor, | ) ) | |
| Petitioner-Appellant and Cross-Appellee, | ) ) | Appeal No. 3-18-0739 Circuit No. 14-P-423 |
| and | ) ) | |
| The People of the State of Illinois *ex rel.* Kwame Raoul, Attorney General, | ) ) ) | Honorable Katherine S. Gorman, |
| Intervenor-Appellee and Cross-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Carter and Wright concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The circuit court abused its discretion when it (1) found the executor rate to be excessive, (2) failed to specify which fees were ordinary executor fees and which should have been delegated to contractors at a reduced rate for the benefit of the estate, (3) failed to apply a contractor rate to tasks that it found should have been delegated to contractors, and (4) failed to make findings relating to $50,592.99 in checks the executor wrote himself from the estate. The court did not abuse its discretion when it reduced the requested attorney fees by $4,400 and found the $400 hourly attorney fee rate to be reasonable.

¶ 2        The executor of Ronald A. Reeder's estate, Gery R. Gasick, filed a petition for $119,300 in fees before the circuit court. The Attorney General, as intervenor, opposed the petition. The court awarded Gasick $82,800 in fees and ordered him to reimburse the estate $36,500. Gasick and the Attorney General both filed motions to reconsider. The court granted Gasick's motion to reconsider in part, to correct mathematical errors, but denied the remainder of his motion and denied the Attorney General's motion to reconsider entirely. This cross-appeal followed.

¶ 3                                    I. BACKGROUND

¶ 4        In June 2005, Reeder executed his last will and testament, leaving his estate valued over $3 million to 27 charitable entities. He named Gasick, his attorney, as primary executor with authority to independently administer the estate. Reeder's will provided:

> "I nominate and appoint my attorney, GERY R. GASICK, as Executor of this Will and further direct that no security on Executor's bond be required of Mr. Gasick. I fully understand that by naming my attorney as Executor, his fees for those activities as Executor will be compensated at his then current hourly rate for services rendered as an attorney."

¶ 5                              A. Independent Administration

¶ 6        In July 2014, Reeder died with neither a spouse nor descendants. In September 2014, Gasick petitioned to probate Reeder's will, which the circuit court granted and appointed him as executor for independent administration. In May 2016, Gasick filed his final report. He stated that the estate's distributable amount totaled $3,013,562.91, which was to be distributed to 27 charitable institutions based on predetermined percentages. Gasick also stated that there were no claims filed against the estate. The report provided that the expenses, fees, and liabilities of the estate had been paid and a summary accounting was forwarded to all 27 charities.

¶ 7        In June 2016, the National Multiple Sclerosis Society, a charitable residual legatee, filed an objection to Gasick's report, stating that it was denied repeated requests for documentation to support the accounting of the administration. Specifically, documentation from any financial institution related to Reeder's accounts and support for the $119,300 in fees.

¶ 8        In August 2016, the Attorney General filed a petition to intervene, raising objections to Gasick's final report and requesting the court order him to produce time sheets and justification for his fees, which the court granted. Thereafter, the Attorney General filed a petition to terminate independent administration. The Attorney General asked the court to terminate Gasick as independent administrator; convert the estate to supervised administration; and direct Gasick to file an inventory, petition for approval of fees, and provide a verified accounting of his actions since taking office with receipts and disbursements made during the pendency of the estate. Gasick opposed the Attorney General's petition and asked the court to find that he satisfied section 28-11(e) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/28-11(e) (West 2014)), deny the petition; and, if necessary, find that the Attorney General failed to establish good cause to terminate the independent administration (755 ILCS 5/28-4(a)(1) (West 2014)).

¶ 9        In May 2017, the circuit court found that good cause existed to terminate the independent administration. The court terminated the independent administration and the estate was converted to supervised administration. The court ordered Gasick, within 75 days, to (1) provide an inventory; (2) petition for approval of attorney fees supported by time records; and (3) provide a verified accounting stating with specificity all receipts and disbursements made during the pendency of the estate, which could be satisfied by producing all Wells Fargo records during the pendency of the state and a complete U.S. Department of Housing and Urban Development (HUD) statement for the sale of Reeder's home.

¶ 10                                    B. Supervised Administration

¶ 11        In June 2017, Gasick filed a petition for approval of fees totaling $119,300. Gasick also noted that he forwarded all the Wells Fargo records during the pendency of the estate and the HUD statement to the Attorney General's office. His petition included eight billing statements covering the time of Reeder's death to the initial summary accounting from April 2016.

¶ 12        In July 2017, the Attorney General objected to Gasick's petition for approval of attorney fees on five grounds: (1) excessive time spent on tasks; (2) lack of specificity in time entries; (3) work billed at an attorney rate for executor tasks that did not require the skill of an attorney, resulting in an excessive hourly rate; (4) unnecessary work performed; and (5) lack of contemporaneously made time records. The Attorney General argued that the petition failed to specify which services were rendered as executor and which were as the attorney because $400 per hour was charged for all tasks and $400 per hour is too high for the expertise required for the services rendered. It also noted that Gasick wrote himself $50,592.99 in checks from Reeder's account, separate from his $119,300 fee request, and argued that if these checks were for Gasick's capacity as power of attorney as suggested, he was required to file a claim against the estate documenting such authority and entitlement to compensation for those services and notice should have been provided to beneficiaries with an opportunity to object.

¶ 13                              C. Circuit Court's Ruling on Petition for Fees

¶ 14        The circuit court found that, although the estate was large in value, it was not complicated as (1) it consisted of various Wells Fargo accounts and a home that sold for $29,500; (2) there were 27 charities named in the Will; and (3) there were no claims against the estate. The court stated, given the lack of complexity, Gasick could engage in work for other clients. Also, the court found that Gasick's hourly rate of $400 was commensurate with his expertise of nearly 40 years

4

of practice and rates customarily charged in the area. However, the court found that the hourly rate of $400 for executor fees was "excessive" because some of the tasks did not require the skill of an attorney and "excessive time" was spent on tasks. The court noted that Gasick submitted time records and testified that the time was recorded contemporaneously with the time being expended.

¶ 15 The court allowed $82,800 of Gasick's $119,300 requested fees and ordered him to reimburse the estate $36,500 within 60 days. We note, upon the filing of motions to reconsider, the circuit court corrected mathematical errors contained in its order.[1] To eliminate confusion, our discussion reflects those corrections. Additionally, we note that the court used a deduction method. Stated another way, instead of stating which of Gasick's charges it allowed, it only mentioned the charges it either denied and/or reduced and subtracted those charges from Gasick's total requested fees. The court's order addressed its reduction in the following three clusters.

¶ 16 1. Cluster One: Mortuary, Funeral, and Cemetery Fees ($5,800 Reduction)

¶ 17 The court noted that 20.5 hours of time Gasick recorded dealt with the funeral home, cemetery, preparation of the obituary, and the like on July 21, 2014, through July 23, 2014. Additionally, on July 25, 2014, he recorded four hours for "funeral service and to gravesite and post service activity." The court stated that Gasick's attendance at the funeral did not benefit the estate and was "wholly unnecessary." The court otherwise found his recorded time to be excessive and reduced his time for those tasks from 24.5 hours ($9,800) to 10 hours ($4,000), which reduced his fee request by $5,800 ($9,800 - $4,000).

¶ 18 2. Cluster Two: Realtor and Contractor Tasks ($26,300 Reduction)

---

[1] The court's order incorrectly stated that Gasick's fee request was for $119,700 instead of $119,300. The court also initially ordered Gasick to reimburse $44,700 to the estate even though the court's reductions only totaled $36,500. The court's reimbursement order also included a number of uncorrected errors that we address in our analysis. *Infra* ¶ 37.

¶ 19    The court listed 26 billing entries, totaling 85.75 hours, from Gasick's fee request that it associated with realtor and contractor tasks. These tasks consisted of checking the status of Reeder's home, paying bills, travel time, home showings, meeting with realtors, setting security timers, cleaning and setting out garbage, addressing a water problem in the basement, supervising a contractor's caulking installation, meeting Reeder's neighbor regarding the listing and for general circulation of the listing sheet, phone calls with insurance agents, supervising the removal of furniture and clothes, phone calls with realtors, and reviewing and signing the listing agreement.

¶ 20    The court stated that Gasick duplicated the services of the realtor and failed to hire contractors at a much lower rate to address the repair and cleanup of the home with no benefit to the estate. Regarding duplicative tasks and the performance of tasks that "could have and should have been provided by a contractor," the court found that there was no need for such extensive supervision and it in no way benefited the estate. The court reduced his time from 85.75 hours ($34,300) to 20 hours ($8,000), which reduced his fee request by $26,300 ($34,300 - $8,000).

¶ 21                    3. Cluster Three: Attorney Fees ($4,400 Reduction)

¶ 22    The court noted that Gasick recorded 17 hours of attorney-related work in three days:

(1) "9/19/14 Prep of Petition to Probate Will, Bond, statutory Notices incl Indep Admin etc; 3 hrs[.]"

(2) "09/22/14 continued prep of Affid Heirship, Declaration, Order Admitting, Letters Testamentary certify of mailing etc. and related statutory research; 6 hrs."

(3) "09/23/14 prep for and court appearance before Judge McCuskey for summary explanation and entry of Order Admitting Will and related scan of documents; prep for and attendance at Peoria County Coroner for inquest and receipt of autopsy report; 8 hrs."

6

¶ 23 The court found 17 hours for these tasks to be excessive and reduced Gasick's time from 17 hours ($6,800) to 6 hours ($2,400), which reduced his fee request by $4,400 ($6,800 - $2,400).

¶ 24 C. Motions to Reconsider

¶ 25 Following the circuit court's ruling, both parties filed motions to reconsider. Gasick argued that the court's order contained mathematical errors, included unbilled hours, included a billing entry twice, failed to add in a contractor's rate for the second cluster fee entries that were reduced because the court found a contractor should have performed those tasks, and erroneously reduced his fees for all clusters. He requested that the court change its reimbursement order from $36,500 to $18,800. The Attorney General argued that the court erred in determining Gasick's reasonable and customary rate of $400 per hour and failed to address Gasick's unauthorized withdrawals of $50,592.99 in July 2015, which were not included in his fee petition. The Attorney General also asked the court to clarify its calculations. The court granted Gasick's motion in part, clarifying that he was ordered to reimburse $36,500. The court denied the remainder of Gasick's motion and the Attorney General's motion to reconsider. Both parties timely appealed.

¶ 26 II. ANALYSIS

¶ 27 The Probate Act provides that both executors and attorneys are entitled to "reasonable compensation" for the administration of an estate. 755 ILCS 5/27-1, 27-2 (West 2014). What constitutes reasonable compensation is determined on a case-by-case basis. *In re Estate of Weeks*, 409 Ill. App. 3d 1101, 1109 (2011). "The factors to be considered include the size of the estate, the work involved, the skill evidenced by the work, time expended, the success of the efforts involved, and the good faith and efficiency with which the estate was administered." (Internal quotation marks omitted.) *Id.* Petitioners seeking fees should present detailed, contemporaneously made time records for the work performed, by whom it was performed, the time expended, and

7

the hourly rate charged. *In re Estate of Bitoy*, 395 Ill. App. 3d 262, 273-74 (2009).

¶ 28    A probate court has broad discretion in determining what constitutes reasonable compensation because it has the requisite skill and knowledge to decide what is fair and reasonable. *In re Estate of Coleman*, 262 Ill. App. 3d 297, 299 (1994). "Further, the *** court is not bound by the opinion of expert witnesses as to the reasonableness of fees, but may rely on its own knowledge and experience and exercise its independent judgment." *Id.* The court's fee determination will not be reversed unless the court abused its discretion. *In re Estate of Kelso*, 2018 IL App (3d) 170161, ¶ 16. A court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would adopt its view. *In re Estate of LaPlume*, 2014 IL App (2d) 130945, ¶ 49. With these standards in mind, we turn to the issues that control these appeals.

¶ 29                                    A. Gasick's Appeal

¶ 30    Gasick raises a number of issues with the circuit court's reduction of his fees. For the sake of clarity, we address those issues in the clusters identified by the circuit court.

¶ 31                                    1. Cluster One

¶ 32    The court noted 24.5 hours of time Gasick recorded as executor for mortuary, funeral, and cemetery tasks, which the court reduced to 10 hours, resulting in a $5,800 fee reduction. The court found that $400 hourly rate for executor tasks was excessive and also that Gasick's reported time for these tasks was excessive. Gasick argues that the court's reduction was erroneous because the time spent was necessary to follow Reeder's directives, and, per Reeder's will, he should be compensated at $400 per hour. The relevant portion of Reeder's will provided:

> "I nominate and appoint my attorney, GERY R. GASICK, as Executor of this Will and further direct that no security on Executor's bond be required of Mr. Gasick. I fully understand that by naming my attorney as Executor, his fees for those

activities as Executor will be compensated at his then current hourly rate for services rendered as an attorney."

¶ 33    Gasick argues that Reeder intended that he be paid his $400 hourly attorney rate for executor tasks and this issue is one of will interpretation. The interpretation of a will is a question of law, which we review *de novo*. *In re Estate of Overturf*, 353 Ill. App. 3d 640, 642 (2004). A testator's intent is determined by looking at the plain and ordinary meaning of the words used and considering the will as a whole. *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 514 (1981). Further, "[i]f the intent may be gathered from the language of the document without reference to rules of construction, there is no need to use them." *Id.*

¶ 34    Our reading of the will indicates that the plain and ordinary meaning of the words used clearly require that Gasick be paid his attorney rate, namely $400 per hour, for executor tasks. Thus, the court abused its discretion when it found that this rate was "excessive," especially where it found that Gasick's $400 hourly rate for attorney fees was reasonable. Thus, the only issue remaining before the court as it pertained to cluster one was whether the time and tasks reported were reasonable. We note, although the court's calculation for this cluster still used the $400 hourly rate, it is unclear what the court considered when it reached its $5,800 reduction. Specifically, whether the court's reduction reflected its finding that the rate was excessive, which we have determined to be erroneous. We decline to speculate. We reverse the court's order as it pertains to cluster one and remand with directions for the court to apply the $400 hourly rate to the billing entries in cluster one that it finds complies with the Probate Act. 755 ILCS 5/27-1 (West 2014).

¶ 35                                      2. Cluster Two

¶ 36    The court noted 85.75 of Gasick's hours associated with various realtor and contractor tasks. The court found that a reduction to 20 hours for cluster two was appropriate because Gasick

9

failed to hire contractors at a lower rate and provided no benefit to the estate by completing these tasks himself. Gasick argues that the court's reduction to 20 hours for cluster two tasks was an abuse of discretion because it failed to make any adjustment for hypothetical contractor services at a lower rate. We agree. We reverse the court's order as it pertains to cluster two and remand with directions for the court to first separate cluster two billing entries between ordinary executor tasks and those that should have been delegated to contractors. Then the court must apply the executor rate to billing entries that it finds complies with the Probate Act (755 ILCS 5/27-1 (West 2014)) and a contractor rate to billing entries that should have been delegated to contractors.

¶ 37    We also note three items in this cluster for the court to reexamine on remand: (1) it incorrectly stated that Gasick's billing entry from June 19, 2015, was for 4 hours instead of 4.5 hours; (2) it included two billing entries (October 12, 2014, and October 20, 2014) in its reduction that were neither billed nor paid by the estate; and (3) it included the same billing entry twice in its reduction for services provided on February 10, 2016, and February 11, 2016.

¶ 38    3. Cluster Three

¶ 39    The court noted 17 hours Gasick recorded in attorney fees for three days of work preparing to probate the will and various associated tasks. The court found the fees to be excessive and reduced Gasick's time to six hours for these entries. Gasick essentially argues that the court failed to consider the time involved for this particular estate. The Attorney General argues that the court properly reduced his fee because this was routine probate work, the time spent was not in the best interest of the estate, and he failed to meet his burden of proof that he provided value to the estate.

¶ 40    Our supreme court has stated, in the context of attorney fees, that "[t]he burden of proof is on the attorney to establish the value of his services." *In re Estate of Callahan*, 144 Ill. 2d 32, 43 (1991). Additionally, the following factors should be considered in determining the reasonable

10

value of an attorney's services:

> "the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client." (Internal quotation marks omitted.) *Id.*; see Ill. R. Prof'l Conduct R. 1.5 (eff. Jan. 1, 2010).

¶ 41 We agree with the court's observation that, though the estate in the case at bar was sizeable, it was not complex. Gasick reported nearly 40 years of experience, and the court found his hourly rate was commensurate with his experience and the fees charged in the area. However, the court took issue with the amount of time Gasick reported. It is within the court's discretion to determine whether such fees are reasonable, and it can rely on its own knowledge and experience. See *Coleman*, 262 Ill. App. 3d at 299. We also take note that, although the court reduced Gasick's time for these specific three entries, it allowed several related billing entries for probate preparation, "working on charity list," and contacting charities totaling over 30 hours. We do not find that the court's decision was arbitrary, fanciful, or unreasonable. Therefore, we cannot say that the court abused its discretion when it found these 17 hours within a three-day period to be excessive and reduced Gasick's time to 6 hours, thereby reducing his fee request by $4,400.

¶ 42                                  B. The Attorney General's Cross-Appeal

¶ 43 First, the Attorney General argues that the court erred when it allowed Gasick to retain fees despite his failure to comply with numerous provisions in the Probate Act. Among other things, it argues that Gasick failed to file Reeder's will immediately upon his death (755 ILCS 5/6-1(a) (West 2014)), petition to probate the will within 30 days of Reeder's death (755 ILCS 5/6-3 (West

11

2014)), and register the estate with the Attorney General's Charitable Trust Bureau (760 ILCS 55/6 (2014)). It contends that these collective omissions do not appear to reflect experience, skill, or good faith and asks for a reassessment of Gasick's $82,800 payment (207 hours at $400/hour).

¶ 44    Here, the court found that Gasick's $400 hourly rate was reasonable based on his experience and the rate charged in the area. We have already decided that it was within the court's discretion to determine whether Gasick's fees were reasonable, and it can rely on its own knowledge and experience. See *Coleman*, 262 Ill. App. 3d at 299. Regarding the total award of fees, we find that we no longer need to decide this issue as we have reversed and remanded a portion of the court's order on Gasick's fee petition.

¶ 45    Second, the Attorney General argues that the court abused its discretion when it allowed Gasick to retain $50,592.99, separate from his fee petition, for insufficiently documented expenses. It argues that the court did not articulate its reasoning on this issue either in its initial decision or its order following the motions to reconsider and that remand is required. We agree. The court failed to make an explicit finding on this issue. We remand for the court to make a finding on these checks Gasick wrote himself from the estate. Specifically, whether these checks were for Gasick's tasks under a different capacity, such as power of attorney, and if so, whether an executor can pay himself for services under such capacity absent the filing of a claim during the claims period.

¶ 46                                 III. CONCLUSION

¶ 47    The judgment of the circuit court of Peoria County is affirmed in part, reversed in part, and remanded with directions. We affirm the court's reduction order as it relates to cluster three. We reverse and remand with directions for the court to (1) recalculate its reduction as it relates to clusters one and two in accordance with our direction (*supra* ¶¶ 34, 36-37) and (2) make a finding and continue with any proceedings necessary relating to the $50,592.99 in checks that Gasick

12

wrote himself from the estate's account (*supra* ¶ 45).

¶ 48        Affirmed in part and reversed in part; cause remanded with directions.